## W. H. Holmes v. State.

### No. 2087.   Decided March 12, 1913.

**1.—Murder—Charge of Court—More than One Assailant.**

Where, upon trial of murder, defendant's own testimony showed that he did not fear an assault from deceased's companion, he calling to the latter to get out of the way, and precluded the idea that defendant was in any danger from the latter or that he thought he was, there was no orrer in the court's refusal of defendant's requested charge to instruct the jury that if it reasonably appeared to defendant that deceased or his said companion was about to shoot defendant, he would be justified in slaying deceased.

**2.—Same—Charge of Court—Requested Charge.**

Where one of defendant's special instructions was embraced in the court's main charge and the other was not raised by the evidence, there was no error in the court's refusal of them.

**3.—Same—Charge of Court—Provoking the Difficulty—Right of Going Armed.**

As the court gave no charge on provoking the difficulty nor in anywise limited the right of defendant to act from real or apparent danger, it was not necessary for the court to instruct the jury in regard to defendant's right to go armed, etc.

**4.—Same—Charge of Court—Presumption—Use of Deadly Weapon—Requested Charge.**

Where, upon trial of murder, the evidence showed that the defendant heard deceased's companion say that whatever he had deceased could get, meaning his pistol, and that deceased took hold of it threatening to kill defendant, the court should have submitted defendant's requested charge that if the weapon used by deceased and the manner of its use was such as was reasonably calculated to produce either death or serious bodily injury, the law presumed that deceased intended these results, as this is the rule established by precedent; and a general charge on self-defense is not sufficient where the above charge is requested.

**5.—Same—Charge of Court—Real and Apparent Danger—Self-Defense.**

Where, upon trial of murder, the evidence did not raise an actual attack, but a reaching by deceased for a pistol, which, if true, would probably create in the mind of one a fear that deceased was then and there about to assault defendant, the court should have so written his charge on murder in the second degree and manslaughter that it would give defendant a right of self-defense from real or apparent danger.

**6.—Same—Charge of Court—Necessary Force—General Definition.**

Where the court's charge on self-defense submitted a general definition on self-defense, limiting the defendant to necessary and reasonable force to defend himself, but in applying the law to the facts, correctly applied the same, there was no reversible error; although, in a case of this kind, this character of charge should not be given.

Appeal from the District Court of Augustine.    Tried below before the Hon. W. B. Powell.

Appeal from a conviction of murder in the second degree; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Blount & Strong* and *Davis & Davis,* for appellant.—On question of court's charge on self-defense in failing to give defendant's requested charge on presumption that deceased intended to kill defendant by the use of deadly weapon: Williams v. State, 65 Texas Crim. Rep., 347; 144 S. W. Rep., 620; Teel v. State, 69 S. W. Rep., 531; Polk v. State, 60 Texas Crim Rep., 499; Hudson v. State, 59 id., 650; McMichael v. State, 49 id., 422; Hall v. State, 43 id., 479; Ivory v. State, 48 id., 279; Cooper v. State, 48 id., 36; Yardley v. State, ·50 Texas Crim. Rep., 644; Smith v. State, 57 id., 455; Jones v. State, 17 Texas Crim. App., 602; Cochran v. State, 28 id., 422; Ward v. State, 30 id., 687; King v. State, id., 277; Kendall v. State, 8 id., 569.

On question of court's charge on force in self-defense: Antu v. State, 66 Texas Crim. Rep., 329; 147 S. W. Rep., 234; Castro v. State, 66 Texas Crim. Rep., 282; 146 S. W. Rep., 553; Carson v. State, 57 Texas Crim. Rep., 394; Huddleston v. State, 54 id., 93; Crenshaw v. State, 48 id., 77; Scott v. State, 46 id., 305.

On question of court's charge in failing to submit more than one assailant: Recen v. State, 58 Texas Crim. Rep., 457; Arnwine v. State, 50 id., 254; Roberts v. State, 48 id., 378; Carter v. State, 37 id., 403; Cartwright v. State, 16 Texas Crim. App., 473; Jones v. State, 20 id., 665; Bean v. State, 25 id., 346.

On question of court's failure to charge on apparent danger: Bell v. State, 20 Texas Crim. App., 445; Spearman v. State, 23 id., 224; Tillery v. State, 24 id., 251.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—Appellant was indicted, charged with murder, and convicted of murder in the second degree and his punishment assessed at five years in the penitentiary.

In this case the appellant in his motion for new trial bases his main complaints to the charge of the court and the failure to give several special instructions requested. Defendant does not deny the killing, but claims he was justifiable in so doing, and the court erred in submitting this issue, and erred in failing to instruct the jury as to the presumption of law arising from the attempted use of a pistol. The defendant testified that deceased, Mr. Boatman, had requested him to sell a horse for him. The day of the killing, he states, he got a chance to sell the horse, and went to see deceased about it. That when he found deceased he was with Redman Posey, and that without just cause or provocation, both cursed and abused him, Posey pulling a

pistol, and telling Boatman that what he had, he (Boatman) had. He says after they had cursed and abused him for some time, they all went on towards the place where Boatman was stopping. That he then went home, and as he had promised some friends to go duck hunting with them, he got his gun and started to go to the pond where he had promised to meet them, the road going by where he knew Boatman was staying. It appears that all of them were drinking considerably on that day. Appellant states that he passed the house where deceased was staying and then details the matter as follows:

"As I left Mr. Posey's house going down the lane I met Redman Posey about fifty or sixty steps, possibly sixty-five steps from Mr. Perry's. I was there when it was stepped since that time. Mr. Posey was afoot and coming towards Mr. Perry's and I was going the other direction towards Prairie. When I met Mr. Posey he said, 'Heloo, where are you going in such a hurry?' and I said I was going towards Prairie, duck hunting, and he said, 'I expect you are,' and I said, 'Yes, come and go with me,' or something to that effect; I wanted to pass by, I did not know whether he was sober and he spoke something about the Choate boys up in Shelby County. I used to run with them a right smart and we were talking about them some, joking the boys, and I said, 'I am going to the duck pond,' and he said, 'Have you got any whiskey?' and I said, 'Yes,' and I pulled out a quart bottle out of my shot pouch. I had a shot pouch about that long I toated squirrel or birds in and shells, too, and it was hanging on the horn of my saddle and I pulled the bottle out and handed Mr. Posey it, and he taken a drink and handed it back to me and I set it on the horn of my saddle on my leg and was sitting there talking, and the first thing I knew after that Mr. Boatman came up, he came right up by the side of my mule and he said, 'What did North Carolina say to South Carolina?' and that was an old saying, he said what did they say, and I said they said it was a long time between drinks, and the bottle was sitting up there and I handed it over to Mr. Boatman and he taken a big drink. Mr. Posey had a pistol on him, I could see the bulk of it under his coat, swinging around. He carried his pistol in a scabbard on a belt. The scabbard stuck below the end of his coat, I could see it when he was walking, see the end of the scabbard. He had his pistol when I met him there. When I said a long time between drinks, Mr. Posey spoke one or two short words and Mr. Boatman commenced, and he said, 'Where in the hell are you goin?' and I said I was going a duck hunting, and he said, 'You are a God dam liar you are not going to no duck pond,' and I said, 'Yes, I am,' and he said, 'You are a God dam lying son-of-a-bitch, you are not going,' and he kept cursing, and I said, 'You all rode over me in the bottom and I took it and I said it is about time you were quitting it. I said I have not stopped to have any trouble and I said Redman stopped me,' and he said, 'You are a God dam liar,' Redman says

that, and I said, 'That is all right,' and Boatman was cursing me for a son-of-a-bitch and everything and my mule in standing there was working around; I was sitting on him, he was restless and he had turned around and had his head turned to come back towards home, and about that time I made some rough talk back to them about getting on me so hot, and told him he was a God dam liar or something that way, and when I said that Redman Posey jerked his pistol up and said, 'Boatman, I have got as good a pistol as ever made and what I have got you have got it,' and *I said, 'Mr. Boatman has got to apologize to me tomorrow or you or me one die,' and I turned to ride off and when I got something about something like ten steps, maybe I don't suppose over eight or* ten steps, I heard him say, 'I will kill the God dam son-of-a-bitch,' and I looked back over my shoulder and looked back that way and I saw him hold of the pistol and Posey, too, and I whirled my mule, *I saw there wasn't any chance to get away, I whirled the mule and when I whirled him I threw the gun to my shoulder, I said, 'Look out Redman!'* and I cut down on him. It looked like Boatman and Posey both had a hold of the pistol at the time I shot. I shot Mr. Boatman because I saw that he was going to kill me, it was to save my life, that is just how come it. I stated that I had gotten about ten steps away from him riding in the direction of Mr. Perry's house when I heard those remarks. When I heard him say he would kill the God dam son-of-a-bitch I looked back. I just jerked the mule sort of that way and threw myself in the saddle, I was going with my face to the west, the road run west, I was going that way, and the mule sort of turning and I threw the gun up, and just as *I turned to shoot I said, 'Look out Redman!' and shot. I did not shoot more than one time."*

This puts the matter in as favorable light for appellant as any part of the record, and we do not think the court erred in refusing the special charge wherein appellant requested the court to instruct the jury that if it reasonably appeared to him that deceased, or Redman Posey was about to shoot him he would be justified in slaying deceased. Appellant's own testimony shows that he did not fear an assault from Posey, he calling to Posey to get out of the way. Appellant's testimony precludes the idea that he was in any danger from Posey, or that he thought so.

Special charge No. 1 was fully covered by the court in his main charge and the testimony does not raise the issue on which charge No. 2 is based. As the court gave no charge on provoking the difficulty, nor in anywise limited the right of defendant to act from real or apparent danger, it was not necessary for the court to instruct the jury in regard to appellant's right to carry a gun or go by Mr. Posey's.

Special charge No. 5 was fully covered by the court in his main charge, but the presumption from the use of a weapon requested in

charge No. 6, was not given and appellant earnestly insists that the court erred in refusing to give this charge. It reads:

"You are charged as a part of the law of this case, that if you find and believe from the evidence, that at the time defendant fired the shot, that the deceased was making or attempting to make an attack upon him, under circumstances which reasonably indicated his intention to murder defendant or to do him some serious bodily injury, and the weapon used by deceased, and the manner of its use, were such as were reasonably calculated to produce either of those results, then the law would presume that deceased intended to kill defendant or to do him some serious bodily injury."

Appellant testifies that some time during that day Posey had pulled his pistol and said to deceased, "What I have got you have got;" that when deceased cursed him, he rode off, and looking back he saw Posey had his pistol out and deceased had hold of it. Taking into consideration that appellant says that he heard Posey say that whatever he had deceased could get, was this such use of the pistol as to call for a charge instructing the jury that if deceased was attempting to use the pistol, then the law presumes that he did intend to do so? Were this an original proposition, the writer would individually hold that when the court instructed the jury that if "deceased was making an attack or *was doing some act which from the manner and character thereof,* viewed from the standpoint of defendant, there was created in his mind a reasonable expectation or fear of death or serious bodily injury," he was guilty of no offense, the failure to instruct the jury as to the presumption arising from the use of a weapon would not present reversible error. However, it seems to be the rule established by this court that when the deceased had in his hand a deadly weapon, the failure to instruct the jury in regard to this presumption, when a special charge is requested, presents reversible error, and being of the opinion that this court should announce the law and adhere to one line of decisions, the writer will not again refer to this matter, but will follow those decisions until the court is willing to change this rule of law. However, if no special charge is requested we will look to the record to see if injury could have resulted from a failure to so charge. The idea being, insofar as we are concerned, that it would only be necessary to charge this presumption specifically when there was an issue raised by the evidence as to the intent of the party, and if there was no evidence raising this issue, then if the court instructed the jury that if one assaulted another with a pistol he would be justified, or if it reasonably appeared to one from the acts and conduct of the other that his life was in danger or he was in danger of serious bodily injury, this would present the case in a way in which no defendant could or would be injured.

The criticism of the court's charge on murder in the second degree that it limited appellant's right to act in self-defense if deceased

made *an actual attack,* is not, when the charge is read as a whole, such error as it alone would be cause for reversal, but as the case will be reversed because of the court's failure to instruct the jury in regard to the presumption arising from the use of a weapon, we would suggest that this paragraph of the charge be so written that it would give defendant the right to act from real or apparent danger.   The charge on manslaughter is also subject to the same criticism.   In this case the evidence does not raise an actual attack, but a reaching for a pistol, which, if true, would probably create in the mind of one a fear that deceased was then and there about to assault him.

The only other ground in the motion we deem it necessary to mention, complains of the following paragraph of the court's charge: "Every person is permitted by law to defend himself against any unlawful attack, reasonably threatening injury to his person, and is justified in using all necessary and reasonable force to defend himself, but no more than the circumstances reasonably indicate to be necessary.   Homicide is justified by law when committed in defense of one's person against any unlawful and violent attack, made in such a manner as to produce a reasonable expectation or fear of death or some serious bodily injury."   This is but a definition, that occurs in the charge where the court is defining murder in the first and second degree.   When the court instructed the jury as to the law of self-defense and applied it to the facts in this case, he does not limit appellant's right to act from appearances of danger in any manner whatsoever, but instructs the jury that if deceased was "doing an act from the manner and character of which it reasonably appeared to him his life was in danger or he was in danger of suffering serious bodily injury, then he was justified in slaying deceased, and the jury should acquit him."   We discussed a similar charge to that given in this case recently in the case of Lee v. State, 67 Texas Crim. Rep., 137, 148 S. W. Rep., 706, and in other cases, and therein held, and again hold, that even though this paragraph be given in a charge wherein definitions are being given, if the court in applying the law in that part of the charge wherein the issue of self-defense does so correctly, this presents no error.   However, in a case of this kind this character of charge should not be given.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*