George A. JONES, Appellant,

v.

The STATE of Texas, Appellee.

No. 52079.

Court of Criminal Appeals of Texas.

Dec. 8, 1976.

**140**

James W. Patterson, Houston, for appellant.

Carol S. Vance, Dist. Atty., James C. Brough, Alvin M. Titus and Charles C. Cate, Asst. Dist. Attys., Houston, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

GREEN, Commissioner.

In a trial before a jury on an indictment for murder, appellant was convicted of voluntary manslaughter. See V.T.C.A. Penal Code, Sec. 19.04. Punishment was assessed at ten years.

The record reflects that at about 4:00 o'clock in the morning of August 20, 1974, in front of appellant's home in Houston, appellant shot deceased three times with a shotgun causing the death of deceased. Mrs. Lydia Johnson, a State's witness, testified that for about twenty hours immediately prior thereto she and deceased had been in deceased's home drinking together. About 3:30 a. m., she left with him in his car with her driving to get her four year old daughter from a babysitter. Upon getting the child she insisted on driving to appellant's home in order to get away from deceased, who was intoxicated. She parked the car in front of appellant's house and, after having an argument with deceased, she and her child got out of the car and entered appellant's yard, with deceased following. She then saw appellant in his yard holding a shotgun. Appellant asked her if deceased had a gun, and she answered she

didn't know, but he had told her he had one. Appellant then "hollered" at deceased to "go on," repeating this three times. After the third time, she saw deceased "coming on to where we were at" and heard him say to appellant "F . . . you." She next saw appellant fire three times at deceased. At no time on this occasion did she hear deceased say anything to appellant except the one remark stated above.

Officers coming to the scene shortly after the shooting found deceased lying dead in the yard. No knife or other weapon was found on deceased or in the yard. Doctor Jachimczyk performed an autopsy that same morning, and testified that death was caused by wounds caused by shotgun pellets.

On cross-examination, Lydia Johnson testified to an "altercation" between appellant and deceased about six weeks prior to the shooting. Deceased was "bending her over the sink backward." Appellant told him to stop, and "took his shoulders and just turned him away from me." She testified that deceased then started to go for his knife but changed his mind, and said to appellant, "If you ever mess with my business again I'll cut your throat."

Appellant's written confession was placed in evidence by the State. In it he admitted shooting deceased three times with a shotgun, stating that after questioning "Lydia about what was going on and she said she needed a place to stay or a way home" he told deceased two or three times to leave, and "when he moved forward I shot one time and when he did not fall I shot two more times." He then called the officers, and voluntarily surrendered.

Appellant, as a witness in his behalf, testified that he was awakened on the morning of the shooting by a barking dog. Upon seeing a car stopped in front of his yard he got his shotgun, believing that perhaps thieves might be attempting to steal parts of his car, and went into his yard. He saw Lydia Johnson and her child in his yard, with deceased behind them, and asked Johnson if deceased, whom he had recog-

nized, had a gun or knife on him, and she said she didn't know, but that "deceased had told her he had received his shotgun back." He then asked the deceased to leave. The deceased responded by backing up a little bit and then he "brought his hand up either to grab at the barrel or something." The appellant then told him to "back-up" one more time. Appellant testified that he then heard deceased say "F... you" and move toward him, pulling his hands out of his pockets. Appellant saw a knife in deceased's hand, as deceased attempted to grab the shotgun and "a flash, a quick flash." Knowing deceased's reputation for violence, particularly when intoxicated, and for carrying a gun or other weapon, and seeing the knife in deceased's hand, he feared for his life and serious bodily harm and the life of his mother and Lydia Johnson and her daughter, all of whom were in the yard. He stepped back behind his car and fired his shotgun at deceased. Appellant further testified that after the first shot, the deceased hollered and continued to advance upon him. The appellant then shot the deceased two more times. He then went in his house, taking his shotgun with him, and called the police. No knife or other weapon was found in the yard where the shooting occurred. Appellant also testified about the prior altercation with deceased, his testimony being substantially the same as Johnson's, supra, except that, according to appellant, deceased's threat was "If you ever put your hands on my 'blank' body I will F... you off any time I want to."

There was considerable testimony to the effect that deceased had a violent temper when drinking, and that he was a man who was likely to carry out his threats, and for carrying a gun, which reputation was well known by appellant. Deceased had told appellant he was a former member of the Clyde Barrow gang, and had once been convicted of murder.

The court charged on the law of murder and the lesser included offense of voluntary manslaughter. The charge also included instructions on self-defense from an unlawful deadly attack, and the defense of others. Due to the disposition of this case, only one ground of error will be discussed.

In ground of error two, appellant contends that the trial court erred in refusing to charge the jury on the law of apparent danger as viewed from appellant's standpoint. The court's charge on self-defense included the following instructions:

"Now, therefore, even though you may believe from the evidence beyond a reasonable doubt that the defendant, George A. Jones, intentionally or knowingly caused the death of William Daniel Jones by shooting him with a gun, if he did, but you further believe from the evidence, or you have a reasonable doubt thereof, that at the time he did so, the said William Daniel Jones was using or attempting to use unlawful deadly force against the defendant, and the defendant reasonably believed the use of deadly force and the deadly force used, if any, was immediately necessary to protect himself against William Daniel Jones' use or attempted use of deadly force, and that a reasonable person in the defendant's position would not have retreated, and the defendant, acting under such reasonable belief caused the death of William Daniel Jones by shooting him with a gun, you will acquit the defendant and say by your verdict 'not guilty.'

"However, if you believe from the evidence beyond a reasonable doubt that at the time the defendant caused the death of William Daniel Jones, if he did, the said William Daniel Jones was not using or attempting to use unlawful deadly force against the defendant, or the defendant did not reasonably believe the use of deadly force and the degree of force used, if any, was immediately necessary to protect himself against the said William Daniel Jones's, use or attempted use of deadly force, or that a reasonable person in the defendant's position at the time would have retreated, then you will find against the defendant on his plea of self-defense."

Appellant timely in writing asked the court to instruct the jury that

"It is not necessary that there should be actual danger, as a person has the right to defend his life and person from apparent danger as fully and to the same extent as he would have were the danger real, as it reasonably appeared to him from his standpoint at the time   .   ."

This request was sufficient to call the court's attention to the failure to charge on apparent danger as it reasonably appeared to appellant from his standpoint at the time, and to preserve error, if any, without the necessity of further objection. Art. 36.-15, V.A.C.C.P.; *Sledge v. State*, Tex.Cr. App., 507 S.W.2d 726.

V.T.C.A. Penal Code, Sec. 9.31, Self-Defense, in Subsection (a) provides:

"(a) Except as provided in Subsection (b) of this section, a person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force."

The exceptions set forth in Subsection (b) are not here applicable.

V.T.C.A. Penal Code, Sec. 9.32, Deadly Force in Defense of Person, reads:

"A person is justified in using deadly force against another:

"(1) if he would be justified in using force against the other under Section 9.31 of this code;

"(2) if a reasonable person in the actor's situation would not have retreated; and

"(3) when and to the degree he reasonably believes the deadly force is immediately necessary:

"(A) to protect himself against the other's use or attempted use of unlawful deadly force; or

"(B) to prevent the other's imminent commission of aggravated kidnapping, murder, rape, aggravated

rape, robbery, or aggravated robbery."

This Court, under the former Penal Code (1925), has consistently held that where the evidence raises the issue of apparent danger, the court, in instructing the jury on the law of self-defense, should tell it that a person has a right to defend from apparent danger to the same extent as he would had the danger been real, provided he acted upon a reasonable apprehension of danger as it appeared to him from his standpoint at the time. See 28 Tex.Jur.2d, Homicide, Secs. 26, 27, and authorities cited; 4 Branch's 2nd Edition, Secs. 2087–2089, incl. page 501, et seq.

There is nothing in the new Penal Code which conflicts with the above rule. In fact, as shown above, Section 9.31(a) expressly provides that "a person is justified in using force against another when and to the degree he *reasonably believes* the force is immediately necessary," etc., supra. Also see Section 9.32, supra, which also provides the reasonable belief doctrine in the use of deadly force in defense of a person. Consequently, in the instant case it was not necessary that the jury find that the deceased was using or attempting to use unlawful deadly force against appellant in order for appellant's right of self-defense to exist. It would be sufficient if the jury found that the appellant reasonably believed, as viewed from his standpoint at the time, that deadly force, when and to the degree used, if it was, was immediately necessary to protect himself against the use or attempted use of unlawful deadly force by deceased. See New Texas Penal Code Forms by Morrison and Blackwell, Section C–9.31, pages 110, 111; 1 Texas Annotated Penal Statutes with Forms, Branch's 3rd Ed., Sec. 9.32, pages 345, 346.

The charge in the instant case did not instruct on the law of apparent danger as viewed from appellant's standpoint although appellant's testimony raised the issue. As quoted above, the charge on self-defense required the jury to find, or have a reasonable doubt thereof, that deceased was using or attempting to use unlawful deadly

force against appellant, *and* that appellant reasonably believed the use of deadly force, etc. (see quote from the charge, supra). In the next paragraph, charging the reverse proposition, the court charged that if deceased was not using or attempting to use unlawful deadly force against appellant, *or* if appellant did not reasonably believe the use of deadly force and the degree of force used, if any, was immediately necessary to protect himself, etc. (see second paragraph of quote from the charge, supra) "then you will find against the defendant on his plea of self-defense." This last negative paragraph instructed the jury to find against appellant on his self-defense plea if the jury believed either (1) deceased was not actually using or attempting to use unlawful deadly force, *or* (2) if the jury found that appellant did not reasonably believe the use of deadly force and the degree of force used by him was immediately necessary to protect himself.

For the error of the court in failing to charge on apparent danger as viewed from appellant's standpoint at the time, the judgment is reversed and the cause is remanded.

Opinion approved by the Court.