Roel TANGUMA, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–82–380–CR.

Court of Appeals of Texas,
Corpus Christi.

Oct. 30, 1986.

Rehearing Denied Dec. 11, 1986.

Donald B. Dailey, Corpus Christi, for appellant.

Grant Jones, Dist. Atty., Corpus Christi, for appellee.

Before NYE, C.J., and UTTER and KENNEDY, JJ.

OPINION

NYE, Chief Justice.

A jury convicted appellant Roel Tanguma of murder. He was sentenced to serve fifty years in prison. In December 1983, this Court reversed the conviction in an unpublished opinion by the late, distinguished Justice Horace S. Young. Relying on *Cobarrubio v. State*, 675 S.W.2d 749 (Tex.Crim.App.1984), and related cases, we held that the portion of the jury charge which applied the law of murder to the facts of the case was fundamentally defective because it omitted the defensive issue of sudden passion. After that opinion was handed down, the Court of Criminal Appeals substantially altered the fundamental error rule as it relates to the jury charge. *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim.App.1985) (opinion on rehearing). Accordingly, the Court of Criminal Appeals granted the State's petition for discretionary review in July 1984 and, because this Court did not have the benefit of *Almanza* and its progeny, remanded the cause in May 1986 for further proceedings in accord with *Almanza*.

Two judges dissented to the order of remand, contending that the Court of Criminal Appeals should decide the merits of the case, since the appeal was already before them, and should not further delay this cause by remanding the case to the Court of Appeals. To this, we agree. However, because the cause is before us, we decide all of appellant's contentions and now affirm the judgment of the trial court.

First, we turn to the question of fundamental error in the jury charge. The task of the reviewing court is to thoroughly review the record and determine, in light of

the overall posture of the case (as it relates to the error), whether the appellant has suffered "egregious harm." *See Almanza*, 686 S.W.2d at 171, 173–74; *see also Moore v. State*, 694 S.W.2d 528, 530–31 (Tex.Crim.App.1985).

Two post-*Almanza* opinions of the Court of Criminal Appeals are instructive. In *Castillo-Fuentes v. State*, 707 S.W.2d 559 (Tex.Crim.App.1986), the murder portion of the jury charge, as in this case, did not instruct the jury that the State had the burden of negating sudden passion on the part of the defendant. The Court of Criminal Appeals found that this was fundamental error because a review of the record showed that voluntary manslaughter was the only theory relied on by the defense. Pointing to a note from the jury during deliberations which reflected confusion over the erroneous portion of the charge, the Court found that the appellant in *Castillo-Fuentes* suffered actual harm that went to the very basis of the case, thereby depriving him of a fair and impartial trial.

By contrast, in *Lawrence v. State*, 700 S.W.2d 208 (Tex.Crim.App.1985), the same error in the jury charge did not amount to "fundamental" error. As with the instant case, *Castillo-Fuentes*, and *Cobarrubio*, the jury charge in *Lawrence* failed to instruct the jury, in the part of the charge applying the law of murder to the facts of the case, that the State had the burden to disprove sudden passion. *Lawrence* held that, when a review of the entire record shows that voluntary manslaughter is merely an incidental defensive theory, an unobjected-to error in the jury charge, on the State's burden of proof to negate sudden passion, does not require automatic reversal. *See also Smith v. State*, 721 S.W.2d 844 (Tex.Crim.App.1986); *White v. State*, 699 S.W.2d 607, 615–18 (Tex.App.— Dallas 1985, no pet.).

■ In the instant case, the error in the jury charge does not amount to error that is considered "fundamental" in the post-*Almanza* sense. As in *Lawrence*, the defensive theory of voluntary manslaughter

was not the primary issue advanced by the defense. In fact, during voir dire, the prospective jurors were each questioned about their ability to follow the law of self-defense. Voluntary manslaughter was not mentioned during voir dire or during the defense counsel's opening statement to the jury and was only touched upon in the most cursory fashion during closing argument. Five eyewitnesses to the disturbance, including appellant, testified. None of their testimony clearly presented evidence of sudden passion arising from adequate cause. We find no reversible error.

Next, we consider appellant's complaint that the trial court's charge should have instructed the jury on appellant's right to defend himself against multiple assailants. A brief discussion of the facts is necessary at this point. We set out the uncontroverted facts and the testimony relevant to appellant's ground of error regarding self-defense against multiple assailants.

The death of Ricky Morin, which led to appellant's indictment in the case before us, resulted from a fight between appellant and Morin. Appellant had arrived with Darold Gotcher at the Circle K convenience store on Leopard Street in Corpus Christi. Coincidentally, Morin was already at the store with Thomas Maldonado. Appellant recognized Maldonado and went toward Maldonado's pickup truck to talk to him. Appellant introduced Gotcher to Maldonado, and Gotcher began returning to his car about the time Morin joined appellant and Maldonado. Morin and appellant began arguing, apparently over a gambling debt; soon they began fighting. Maldonado joined the fight on Morin's behalf.

Darold Gotcher testified that, when he reached his car, he saw Maldonado and Morin "beating up on" appellant. Gotcher intervened and threw Maldonado to the ground. He then began struggling to separate the appellant and Morin, who had a knife, when Maldonado stabbed him. Gotcher then took a pistol out of his pocket, and Maldonado ducked underneath his truck. By this time, appellant and Morin were on the other side of Maldonado's

truck. Gotcher testified that he was afraid that Maldonado would come out on that side. He ran around to the side of the truck where appellant and Morin were. He could not see Maldonado, so he tried again to pull appellant and Morin apart. As he was trying to do so, the pistol was somehow knocked from his hand. Appellant then picked up the pistol and shot the advancing Morin.

Maldonado also testified. He later stated that he was hiding in the camper portion of the truck when the shots were fired; however, his first testimony was that he lay in wait for Gotcher, as Gotcher came to the other side of the truck. When Gotcher came close enough, Maldonado grabbed the barrel of Gotcher's pistol and stabbed him. Appellant then grabbed Maldonado from behind, but Maldonado spun out of his grasp, used appellant as a shield so that Gotcher would not fire his pistol, and stabbed appellant three times. He pushed appellant at Gotcher and ducked under the truck. Maldonado then heard two shots.

Appellant's testimony was that the fight began in the middle of the parking lot. When he and Morin began fighting, Maldonado grabbed him from behind. He felt Maldonado let go, and thought that Gotcher had pulled Maldonado away. After that, he did not remember seeing or hearing Maldonado. He and Morin rolled and fought until they reached the other side of the truck. He remembered feeling "something warm by my side." Only later did appellant find out that he had been stabbed. He appeared to have thought Morin had stabbed him, because he and Morin were struggling over a knife in Morin's possession. Gotcher at some point pushed appellant and Morin apart, and appellant saw Gotcher's pistol, picked it up, and fired two shots at the advancing Morin. The first shot was fired in the air; the second killed Morin. On cross-examination, appellant repeated that he neither saw nor heard Maldonado after Gotcher pulled Maldonado away.

The charge of the court instructed the jury on self-defense; however, the court submitted only the right of the appellant to defend himself against threats from or use of force by the deceased. Maldonado was not mentioned in the court's instructions on the accused's right of self-defense. The State concedes that evidence was received that both Thomas Maldonado and the deceased had attacked appellant. However, the State contends that Maldonado had abandoned the attack, or had been prevented by Gotcher from continuing the attack, at the time appellant shot the deceased. Therefore, the State argues, a charge on the right to defend against multiple assailants was not required. We agree.

■ A defendant is entitled to a charge on his right to defend against multiple assailants if "there is evidence, viewed from the accused's standpoint, that he was in danger from an unlawful attack or a threatened attack at the hands of more than one assailant." *Frank v. State*, 688 S.W.2d 863, 868 (Tex.Crim.App.1985), *quoting Wilson v. State*, 140 Tex.Cr.R. 424, 145 S.W.2d 890, 893 (1940). In determining whether a requested defensive charge has support in the evidence, we must consider all the evidence presented, no matter how weak, and regardless of whether it was contradicted. It is reversible error to charge the jury only on a defendant's right to defend against the deceased, if there is evidence that more than one person attacked the defendant. *See Sanders v. State*, 632 S.W.2d 346, 348 (Tex.Crim.App. 1982); *Black v. State*, 65 Tex.Cr.App. 336, 145 S.W. 944, 947 (1912).

The testimony summarized above presents the novel issue of whether a charge on self-defense against multiple assailants is required, where testimony is introduced which would support the charge, but the appellant takes the stand and negates the issue. The testimony of Gotcher and Maldonado contains statements which would tend to support the inclusion of an instruction on appellant's right to defend against either Morin or Maldonado, or both. However, appellant stated repeatedly that he did not see or hear Maldonado at the time he fired the pistol, nor had he been

aware of Maldonado for some time prior to the shooting. Moreover, the entirety of appellant's testimony reveals that his focus throughout the fight was exclusively on the deceased. He did not remember seeing or hearing the store manager or Maldonado's wife and child at the scene. He was only peripherally aware of the participation of Gotcher and Maldonado in the fight. Morin was the only combatant appellant saw with a knife.

The right to defend against multiple assailants is directly derived from the accused's right of self-defense. The general rule of self-defense is that "a person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary." *Jones v. State*, 544 S.W.2d 139, 142 (Tex. Crim.App.1976); TEX.PENAL CODE ANN. § 9.31 (Vernon 1974). The reasonableness of an accused's belief that force was immediately necessary to defend himself must be viewed from the accused's standpoint at the time he acted. *See Jones*, 544 S.W.2d at 142; *Kolliner v. State*, 516 S.W.2d 671, 674 (Tex.Crim.App.1974); *Werner v. State*, 680 S.W.2d 858, 863 (Tex.App. —Houston [1st Dist.] 1984), *aff'd*, 711 S.W.2d 639 (Tex.Crim.App.1986); *see also Smith v. State*, 638 S.W.2d 208, 210 (Tex. App.—Fort Worth 1982, no pet.) (focusing on *immediate* necessity of deadly force). That is why, in determining whether a charge on multiple assailants is required, the evidence is viewed from the standpoint of the accused. *Frank v. State*, 688 S.W.2d at 868.

At trial, appellant's theory of the case was that he was justified in shooting Ricky Morin because Morin was attacking him with a knife. The trial court correctly instructed the jury on the appellant's right of self-defense against threats or attacks from Morin. On appeal, he contends that the jury should also have been told of his right to defend against threats or attacks from Maldonado, or Morin, or both. However, appellant's own testimony showed that, from his standpoint, he did not fear an attack from anyone but Morin at the

time he fired. *See Holmes v. State*, 69 Tex.Cr.R. 588, 155 S.W. 205, 206 (1913); *Jenkins v. State*, 59 Tex.Cr.R. 475, 128 S.W. 1113, 1114–15 (1910). Appellant's argument that he reasonably believed himself under attack by Maldonado was negated by his own testimony. Even when he was aware of Maldonado's presence, he merely stated that he felt Maldonado grab him from behind. This is no evidence of a use or threatened use of deadly force by Maldonado even at this early point in the fight. Although the testimony of Gotcher and Maldonado arguably placed Maldonado in a position to be a *possible* threat to appellant, neither one could testify to *appellant's* state of mind at the time he killed Morin. Appellant did not remain silent; he took the stand and testified that he had not seen or heard Maldonado since the very beginning of the fight. We are thus confronted with a contention similar to that in which a defendant takes the stand and judicially confesses to the truth of every allegation in the indictment, then, on appeal, contests the sufficiency of the evidence to support his conviction. *See Dinnery v. State*, 592 S.W.2d 343 (Tex.Crim. App.1979) (opinion on rehearing). We find no error in the trial court's refusal to charge on the right to defend against multiple assailants.

Appellant next complains that the trial court erred in refusing to charge on the right to continue shooting. He relies on his own testimony and that of Gotcher that the deceased continued to approach him after he fired the first shot. The testimony referred to by appellant is that appellant fired one shot above the deceased, but the deceased continued advancing, so appellant fired the second, fatal shot. The shots came in rapid succession and were part of a continuous transaction. The positions of the parties did not materially change, nor were any shots fired after the deceased fell. *See Mays v. State*, 563 S.W.2d 260, 261–62 (Tex.Crim.App.1978); *Goodman v. State*, 134 Tex.Cr.R. 280, 114 S.W.2d 885, 886 (1938); *see also Philen v. State*, 683

S.W.2d 440 (Tex.Crim.App.1984). No error is shown.

■ Turning to appellant's remaining grounds of error, we first consider his contention that the trial court erred in admitting a photograph of the deceased, before his death, into evidence. Generally, a photograph is admissible unless it is offered solely to arouse the passions of the jury. *Booth v. State*, 635 S.W.2d 767, 770 (Tex. App.—Corpus Christi 1982, no pet.). Moreover, the medical examiner's verbal description of the deceased's appearance and build was admitted without objection. *See Brooks v. State*, 599 S.W.2d 312, 318 (Tex. Crim.App.1979), *cert. denied*, 453 U.S. 913, 101 S.Ct. 3146, 69 L.Ed.2d 996 (1980). "The admissibility of photographs must rest largely in the discretion of the trial judge." *Brasfield v. State*, 600 S.W.2d 288, 297 (Tex.Crim.App.1980). We find no abuse of discretion by the trial judge in admitting the photograph.

■ Appellant also complains that his motion for a mistrial was improperly denied after one of the State's witnesses mentioned that he had spoken to appellant while appellant was in jail. Appellant claims that the witness' comment violated his rights to trial by an impartial jury and to a presumption of innocence, as provided by TEX.CONST. art. I, § 10, and U.S. CONST. amends. VI and XIV. The witness testified as follows:

> He told me to tell Thomas Maldonado that not to be a snitch and not to go mess around with his brothers, that when he would get out of jail that he would, them two would take it—excuse me, them two, they would settle it up, you know, settle the whole thing up.

Appellant cites only *Moore v. State*, 535 S.W.2d 357 (Tex.Crim.App.1976), which holds that a defendant's right to a presumption of innocence is violated by being brought before the jury in handcuffs. The witness' indirect reference to the fact that appellant had been in jail in the past does not rise to the kind of prejudice proscribed by *Moore*.

■ Appellant asserts ineffective assistance of counsel, in violation of his rights to counsel as guaranteed by U.S.CONST. amends. VI and XIV, and TEX.CONST. art. I, § 10. The record reflects that counsel for appellant conducted a vigorous voir dire examination of the jury panel, successfully challenging two jurors for cause. Counsel for appellant also successfully presented two exceptions to the charge of the court and won a specially requested charge. Appellant's counsel also successfully discovered, prior to trial, taped conversations between the witnesses to the altercation and the investigating police officers, which he used in cross-examining the State's witnesses. Several motions in limine urged by appellant's counsel were also granted by the trial court. In view of the entire record, we cannot say that the assistance rendered by counsel for appellant was so ineffective that it failed to amount to the constitutionally guaranteed level of reasonably effective assistance. Additionally, appellant has not shown how the reliability of the jury's verdict was undermined by the errors counsel is said to have committed. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Hernandez v. State*, No. 1009–83 (Tex. Crim.App., September 17, 1986) (not yet reported).

■ Appellant's final contention is that his counsel's closing argument to the jury was erroneously curtailed by the trial court. The action of the trial court is assigned as a violation of appellant's state and federal constitutional right to counsel. Our review of the record shows that appellant's counsel voluntarily withdrew his statement after the prosecutor's objection, saying he would let the jury determine what they remembered. The trial court nevertheless sustained the State's objection and instructed the jury to disregard the comment. We do not view this incident as analogous to *Ruedas v. State*, 586 S.W.2d 520 (Tex.Crim.App.1979), where a complete and summary denial of defense counsel's request to present a closing argument was held to violate the constitutional right to counsel. Here, defense counsel made a

lengthy argument to the jury, voluntarily withdrew the objected-to remark, and was permitted to continue his argument without any limitations imposed by the trial court. *See Johnson v. State,* 698 S.W.2d 154, 166 (Tex.Crim.App.1985); *Lopez v. State,* 660 S.W.2d 592, 595 (Tex.App.—Corpus Christi 1983, pet. ref'd).

All of appellant's grounds of error have been considered and are overruled. The judgment of the trial court is affirmed.

### OPINION ON MOTION FOR REHEARING

Our original opinion carefully reviewed the law of self-defense. We emphasized, in considering whether a jury charge on self-defense is required, the importance of the defendant's "reasonable belief" that he is in danger of an unlawful attack. We used the definition of self-defense provided in Tex.Penal Code Ann. § 9.31 (Vernon 1974) to decide what we considered the fundamental question in appellant's ground of error regarding his requested charge on the right to defend himself against multiple assailants: Was the evidence to be viewed "in the light most favorable to the defendant" or was it to be viewed "from the defendant's standpoint"? A related question also suggested itself: Is there a difference? Implicit in our ruling on appellant's ground of error was a determination that, at least in the peculiar facts of this case, there *is* a difference between the two—and the correct way to view the evidence is from the standpoint of the defendant. *See Frank v. State,* 688 S.W.2d 863, 868 (Tex.Crim.App.1985). This method of review focuses more on the reasonable belief of the accused, as prescribed by statute, than on inferences drawn from the testimony of third persons.

Appellant's motion for rehearing contends that this Court ignored evidence supporting the requested charge, or else sat as a jury and discounted that evidence. We did not. We considered all the evidence and decided that, although evidence was received which, *taken by itself,* would support an inference of perceived threat from Thomas Maldonado sufficient to require the requested charge, appellant's direct evidence of his state of mind (standpoint) took away any possibility of an inference that appellant reasonably believed himself to be in danger from an attack by Maldonado. Evidence that Maldonado stabbed appellant near the time that appellant shot Ricky Morin is not evidence that appellant feared Maldonado. *McGowan v. State,* 664 S.W.2d 355, 357 (Tex.Crim.App.1984); *Tullos v. State,* 698 S.W.2d 488, 490 (Tex. App.—Corpus Christi 1985, pet. ref'd). Though Maldonado's testimony that he stabbed appellant could lead to an inference that appellant knew Maldonado was there, continued to be a threat, and reasonably feared an attack, appellant directly said that he did not.

A new question is suggested by appellant's motion for rehearing: Does direct testimony of a defendant regarding his reasonable beliefs "trump" testimony which would support an inference of his reasonable belief? Because we view the evidence from the standpoint of the defendant, and not in the light most favorable to the defendant, it does. Appellant is the only one who can testify to his subjective belief.

Consider for a moment the following hypothetical situation. A jury has heard from several eyewitnesses that a defendant walked into a room where the deceased was sitting. The deceased pulled out a gun, cocked it, and fired it at the defendant. The defendant ducked behind a chair, pulled out his own gun and killed the deceased. After several witnesses have testified to this version if the facts, the defendant takes the stand and says, "Yes, I was afraid of the deceased; however, I entered the room with the sole purpose of shooting the deceased. Even if he had no gun, I would still have killed him." From a practical standpoint, if a defendant takes the stand and testifies that he did not fire his gun in self-defense, all of the eyewitness accounts in the world will not require a charge on self-defense. As we stated in our opinion in original submission, appellant's testimony that he did not know

where Maldonado was, and that he neither saw nor heard him, amounts to a judicial confession that he was not defending himself against an attack by Maldonado.

It is true that the jury may believe or disbelieve all or part of any witness' testimony. *Williams v. State*, 692 S.W.2d 671, 676 (Tex.Crim.App.1984); *Westfall v. State*, 663 S.W.2d 664, 666 (Tex.App.—Corpus Christi 1983, pet. ref'd). However, evidence is not to be plucked out of context and examined in a vacuum to determine if a requested charge is required. *Godsey v. State*, No. 843–82, 719 S.W.2d 578 (Tex. Crim.App., 1986).

Viewing the evidence of Maldonado's presence near appellant *in the context of* appellant's testimony that he was unaware of Maldonado's presence, we do not find that appellant's requested charge on the right to defend against multiple assailants was warranted in this case. Appellant's motion for rehearing is overruled.