

## NUMBER 13-12-00462-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

RASHAD ELAY GLENN,                                                    Appellant,

v.

THE STATE OF TEXAS,                                                   Appellee.

### On appeal from the 372nd District Court
### of Tarrant County, Texas.

## MEMORANDUM OPINION

### Before Justices Garza, Benavides, and Perkes
### Memorandum Opinion by Justice Benavides

Rashad Elay Glenn appeals his conviction for capital murder. *See* TEX. PENAL CODE § 19.03(a)(7)(A) (West 2011). By three issues, Glenn asserts that (1) the trial court erred by failing to include a "relationship-of-the-parties" instruction in the jury charge; (2) the trial court erred by failing to include an "apparent danger" instruction in

the jury charge; and (3) the Texas capital murder sentencing statute is unconstitutional under the United States and Texas Constitutions.   We affirm.

## I.    BACKGROUND[1]

Three witnesses testified that in the late morning hours of Saturday, August 21, 2010, they observed then eighteen-year-old Glenn open fire on two men seated inside of a sports utility vehicle in a Fort Worth residential neighborhood.   One of the victims, Charles Govan, died at the scene, while the second victim, Richard Hawkins, died a short time later at the hospital.   At the scene, police investigators took photographs, dusted for fingerprints, and recovered a total of five 9-millimeter cartridge casings.

Police issued a warrant for Glenn's arrest on charges of capital murder.   After a short time on the run, Glenn was arrested and transported to police headquarters. Once there, Glenn was read his *Miranda* rights, waived them, and spoke to Fort Worth Police Detective Tom O'Brien.[2]

Detective O'Brien testified that Glenn told him he approached Govan and Hawkins that morning as they sat in their vehicle.   According to Glenn, he had a conversation with Hawkins, who was in the driver's seat, and observed that Hawkins had an extended-magazine-ammunition clip in his hand.   Detective O'Brien noted that Glenn never mentioned that he observed a gun in Hawkins's possession.   Detective O'Brien testified that at that point in the conversation, Glenn exchanged "words" with Govan, who was seated in the passenger's seat, and walked over to his side of the

---

[1] This case is before this Court on transfer from the Second Court of Appeals in Fort Worth pursuant to a docket-equalization order issued by the Supreme Court of Texas.   *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013).

[2] A video of the interrogation was admitted into evidence and played for the jury at trial, but was not included in the appellate record.

2

vehicle.   Glenn told Detective O'Brien that he never saw Govan with a gun or any other weapon, but that he saw Govan "reach down in the car," so he fired the first shot at Govan and then fired a second shot to Govan's head.   Glenn later opened fire toward Hawkins and left the scene immediately.   Glenn did not testify at trial.

The jury found Glenn guilty of capital murder, and the trial court sentenced him to an automatic sentence of life imprisonment without parole.   *See* TEX. PENAL CODE ANN. § 12.31(a)(2) (West 2011).[3]   This appeal followed.

## II.   JURY CHARGE ERROR

By his first two issues, respectively, Glenn contends that the trial court committed jury charge error for failing to instruct the jury on his prior relationship to the decedents and on the issue of "apparent danger."

### A.  Standard of Review

Our first duty in analyzing a jury-charge issue is to determine whether error exists. *See Ngo v. State,* 175 S.W.3d 738, 743 (Tex. Crim. App. 2005) (en banc).   If we find error, we analyze it for harm.   *Id.*   The degree of harm necessary for reversal depends on whether the error was preserved by objection.   *Id.*   If the error was preserved by objection, we will reverse if we find "some harm" to the defendant's rights.   "Some harm" means any harm, regardless of degree.   *Arline v. State*, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986) (en banc); *see also Atkinson v. State*, 934 S.W.2d 896, 897 (Tex. App.—Fort Worth 1996, no pet.).   Under a "some-harm" analysis, we are obligated to determine whether the error was "calculated to injure the rights of the defendant."   *See Arline*, 721 S.W.2d at 352.   We consider the harmfulness in context of the entire record.   *Id.*   If no

---

[3] Prior to trial, the State elected not to seek the death penalty against Glenn.   *See* TEX. PENAL CODE ANN. § 12.31(a) (West 2011).

objection was made, we will reverse only if the record shows "egregious harm" to the defendant. *Ngo*, 175 S.W.3d at 743.

## B. "Relationship of the Parties" Instruction

Glenn asserts by his first issue that the trial court erred in failing to *sua sponte* instruct the jury pursuant to article 38.36(a) of the code of criminal procedure that it should consider during its deliberations Glenn's previous relationships with the decedents.

First, we note that error relating to a jury charge may be preserved by asserting either an objection or a requested charge. *See Vasquez v. State*, 919 S.W.2d 433, 435 (Tex. Crim. App. 1996) (en banc). Objections and special requested instructions must be submitted in writing or dictated to the court reporter before the charge is read to the jury in order to preserve a trial court's error in refusing a special requested instruction. *See* Tex. Code Crim. Proc. Ann. arts. 36.14 (West 2007), 36.15 (West 2006).

Glenn admits on appeal that trial counsel did not request the "relationship of the parties" instruction and instead argues that the trial court had a duty to instruct the jury *sua sponte* because such relationship evidence was "of vital importance" to his defense and the jury should have been instructed to consider such relationship evidence in its deliberations. We disagree. Glenn argues that the "relationship of the parties" instruction aids his own defense by justifying why he felt threatened by Hawkins and Govan.

A trial court is statutorily obligated to submit a charge that distinctly sets forth the law applicable to the case and shall not express any opinion as to the weight of the evidence, not sum up the testimony, discuss the facts, or use any argument in his charge

4

calculated to arouse the sympathy or excite the passions of the jury. *Id.* art. 36.14. The court of criminal appeals has noted, however, that a trial court is under no *sua sponte* duty to instruct the jury on unrequested defensive issues because an unrequested defensive issue is not "applicable to the case" to trigger the trial court's duty under article 36.14. *See Posey v. State*, 966 S.W.2d 57, 62 (Tex. Crim. App. 1998) (en banc). According to *Posey*, to hold otherwise would render the trial court's relevant duty under article 36.14 "meaningless."[4] Decisions as to the defensive theory of a case should be left to the defendant and his lawyer. *Id.* at 63.

Accordingly, we conclude that the trial court did not err by failing to *sua sponte* instruct the jury on article 38.36(a). *See id.* at 62. Glenn's first issue is overruled.

### C. "Apparent Danger" Instruction

By his second issue, Glenn argues that the trial court erred by denying his proposed apparent-danger instruction as it related to the issue of self-defense.

A defendant is entitled to an instruction on self-defense if the issue is raised by the evidence, whether that evidence is strong or weak, unimpeached or contradicted, and regardless of what the trial court may think about the credibility of the defense. *Ferrel v. State*, 55 S.W.3d 586, 591 (Tex. Crim. App. 2001); *see Davis v. State*, 268 S.W.3d 683, 693 (Tex. App.—Fort Worth 2008, pet. ref'd). A person is justified in using deadly force against another when and to the degree the actor reasonably believes the force is

---

[4] The *Posey* Court recognized only one exception in which it has held that a trial court erred by failing to *sua sponte* instruct the jury on a defensive issue—that is, the defensive issue of "release in a safe place" at the punishment phase of an aggravated kidnapping prosecution. *Posey v. State*, 966 S.W.2d 57, 62 (Tex. Crim. App. 1998) (en banc).

The court noted, however, that such an exception was overruled by the Legislature and such action by the Legislature further shows that the Legislature does not intend to impose a duty on trial courts to *sua sponte* instruct the jury on defensive issues. *See id.*

5

immediately necessary to protect the actor against the other's use or attempted use of unlawful force.[5] TEX. PENAL CODE ANN. § 9.31(a) (West 2011).

Assuming without deciding that Glenn was entitled to a self-defense instruction, we note that the trial court's charge included the following instruction on self-defense with regard to the charge of capital murder:

> Now, if you find from the evidence beyond a reasonable doubt that on the occasion in question the Defendant, Rashad Elay Glenn, committed the offense of capital murder, but you further find from the evidence, or have a reasonable doubt thereof, that [Glenn] reasonably believed, as viewed from his standpoint at the time, that from the words or conduct, or both, of Richard Hawkins and/or Charles Govan, it reasonably appeared to [Glenn] that his life or person was in danger and there was created in his mind a reasonable expectation or fear of death or serious bodily injury from the use of unlawful deadly force at the hands of Richard Hawkins and/or Charles Govan, and that acting under such apprehension and reasonably believing that the use of deadly force on his part was immediately necessary to protect himself against Richard Hawkins' and/or Charles Govan's use or attempted use of unlawful deadly force, he shot Richard Hawkins and/or Charles Govan with a deadly weapon, to wit: a firearm, that in the manner of its use or intended use was capable of causing death or serious bodily injury, then you should acquit [Glenn] on the grounds of self defense; or if you have a reasonable doubt as to whether or not [Glenn] was acting in self defense on said occasion and under the circumstances, then you should give [Glenn] the benefit of that doubt and say by your verdict "Not Guilty" to the offense of capital murder.

> However, if you find from the evidence beyond a reasonable doubt that at the time and place in question [Glenn] did not reasonably believe that he was in danger of death or serious bodily injury; or if you find from the evidence beyond a reasonable doubt that [Glenn], under the

---

[5] The use of force against another is not justified: (1) in response to verbal provocation alone; (2) to resist an arrest or search that the actor knows is being made by a peace officer, or by a person acting in a peace officer's presence and at his direction, even though the arrest or search is unlawful, unless the resistance is justified under subsection (c) of this statute; (3) if the actor consented to the exact force used or attempted by the other; (4) if the actor provoked the other's use or attempted use of unlawful force, unless: (A) the actor abandons the encounter, or clearly communicates to the other his intent to do so reasonably believing he cannot safely abandon the encounter; and (B) the other nevertheless continues or attempts to use unlawful force against the actor; or (5) if the actor sought an explanation from or discussion with the other person concerning the actor's differences with the other person while the actor was: (A) carrying a weapon in violation of Texas Penal Code section 46.02; or (B) possessing or transporting a weapon in violation of Texas Penal Code section 46.05. TEX. PENAL CODE ANN. § 9.31(b) (West 2011).

circumstances, and viewed from his standpoint at the time, did not reasonably believe that the degree of force actually used by him was immediately necessary to protect himself against either Richard Hawkins' or Charles Govan's use or attempted use of unlawful deadly force, or if you believe [Glenn] provoked the use or attempted use of the unlawful force by either Richard Hawkins or Charles Govan or both and [Glenn] did not abandon the encounter and did not clearly communicate to Richard Hawkins and/or Charles Govan his intent to do so and did not reasonably believe he could not safely abandon said encounter, or if you believe that [Glenn] sought an explanation from or discussion with Richard Hawkins and/or Charles Govan concerning the actor's differences with Richard Hawkins and/or Charles Govan while the actor was carrying a weapon in violation of Section 46.02 of the Penal Code, then you fill find against [Glenn] on the issue of self defense as to the offense of capital murder.

As to the law of self-defense, only if you find for [Glenn] on the issue of self defense and acquit him of the offense of capital murder do you next individually consider the applicability of self defense law to the allegations of murder in Count Two and Count Three. If you find against [Glenn] on the issue of self defense as to the offense of capital murder, then Count Two and Count Three may not be considered.

Glenn objected to this instruction and requested the following separate instruction on apparent danger, which the trial court denied:

When a person is attacked with unlawful deadly force, or he reasonably believes he is under attack or attempted attack with unlawful deadly force, and there is created in the mind of such person a reasonable expectation or fear of death or serious bodily injury, then the law excuses or justifies such person in resorting to deadly force by any means at his command to the degree that he reasonably believes is immediately necessary, viewed from his standpoint at the time, to protect himself from such attack or attempted attack. It is not necessary that there be an actual attack or attempted attack, as a person has a right to defend his life and person from apparent danger as fully and to the same extent as he would had the danger been real, provided that he acted upon a reasonable apprehension of danger, as it appeared to him from his standpoint at the time, and that he reasonably believed such deadly force was immediately necessary to protect himself against the other person's use or attempted use of unlawful deadly force.

In determining the existence of real or apparent danger, you should consider all the facts and circumstances in evidence before you, together with all relevant facts and circumstances going to show the condition of the mind of [Glenn] at the time of the offense, if any, and in considering such circumstances, you should place yourselves in [Glenn's] positions at that

7

time and view them from his standpoint alone.

In support of his argument for a separate apparent-danger instruction, Glenn cites *Jones v. State*, 544 S.W.2d 139, 141–42 (Tex. Crim. App. 1976), in which the Court held that the trial court erred by not instructing the jury on the law of apparent danger, as viewed from the defendant's standpoint, although the defendant's testimony raised the issue.

Although Glenn acknowledges *Valentine v. State*, 587 S.W.2d 399, 400–01 (Tex. Crim. App. 1979), a case that was issued after *Jones*, he fails to adequately distinguish its analysis from the present set of facts. In *Valentine*, the Court held that the trial court properly:

> instructed the jury that the appellant's conduct would be justified if the appellant reasonably believed that the deceased was using or attempting to use unlawful deadly force against her at the time of the shooting. By defining the term "reasonable belief" as it did, the court instructed the jury that a reasonable apprehension of danger, whether it be actual or apparent, is all that is required before one is entitled to exercise the right of self-defense against his adversary.

*Id.* at 401. The *Valentine* Court distinguished the analysis in *Jones* by noting that the trial court's instruction in *Jones* was erroneous because it did not require "the jury to find, or have a reasonable doubt thereof, that at the time he was shot, the deceased was actually using or attempting to use unlawful deadly force against the defendant." *Id.*

In this case, the trial court instructed the jury that Glenn's conduct would be justified if Glenn

> reasonably believed, as viewed from his standpoint at the time, that from the words or conduct, or both, of Richard Hawkins and/or Charles Govan, it reasonably appeared to [Glenn] that his life or person was in danger and there was created in his mind a reasonable expectation or fear of death or serious bodily injury from the use of unlawful deadly force at the hands of Richard Hawkins and/or Charles Govan.

8

The trial court defined "reasonable belief" in the charge as a belief that would be held by an ordinary and prudent person in the same circumstances as Glenn. By defining "reasonable belief" in this manner, "the court instructed the jury that a reasonable apprehension of danger, whether it be actual or apparent, is all that is required before one is entitled to exercise the right of self-defense against his adversary." *Id.* Such instruction adequately presented Glenn's defensive theory and protected his rights. *See id.*; *Bundy v. State*, 280 S.W.3d 425, 430 (Tex. App.—Fort Worth 2009, pet. ref'd).

Accordingly, we conclude that the trial court did not err by denying Glenn's proposed apparent-danger instruction and overrule his second issue.

### III.    CONSTITUTIONALITY OF THE CAPITAL MURDER SENTENCING STATUTE

By his final issue, Glenn contends that the capital murder sentencing statute, as applied to his case, violates:    (1) the prohibition against cruel and unusual punishment, *see* U.S. CONST. amend. VIII; TEX. CONST. art. I, §§ 3, 3a; and (2) his due process rights. *See* U.S. CONST. amends. V, XIV; TEX. CONST. art. I, § 19.

We first address Glenn's argument that the mandatory life sentence imposed by penal code section 12.31(a) amounts to cruel and unusual punishment.[6] Because this case was transferred from our sister court in Fort Worth, we decide it in accordance with the precedent of that court. *See* TEX. R. APP. P. 41.3. The Fort Worth Court of Appeals has rejected previous arguments that the assessment of a mandatory life sentence for the

---

[6] Although Glenn states in his final issue that the applicable sentencing statute violates his federal and state due process rights, his brief cites only to federal authorities that interpret the United States Constitution's prohibition against cruel and unusual punishment under the Eighth Amendment. Accordingly, we will address Glenn's argument solely under federal constitutional principles and applicable case law. *See* Tex. R. App. P. 38.1(i).

offense of capital murder constitutes cruel and unusual punishment within the meaning of the Eighth Amendment and has refused to revisit the issue. *See Sierra v. State*, 157 S.W.3d 52, 64 (Tex. App.—Fort Worth 2004), *aff'd on other grounds*, 218 S.W.3d 85 (Tex. Crim. App. 2007); *see also Slater v. State*, No. 02-11-00368-CR, 2013 WL 2631194, at *6 (Tex. App.—Fort Worth June 13, 2013, pet. ref'd) (mem. op., not designated for publication). Therefore, we follow those decisions today and conclude that the mandatory life sentence without parole provision is not unconstitutional under the Eighth Amendment.

We next turn to Glenn's argument that a mandatory life sentence precludes him from presenting any mitigating evidence to the jury such as his young age (18) at the time the crime was committed. Glenn further argues that, by removing the possibility of presenting a "myriad of mitigating issues that the jury should be able to consider," section 12.31(a) effectively creates a "de facto argument of disproportionality with regard to a sentence of life without parole" as applied to this case.

The United States Supreme Court concluded in *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991), that the Eighth Amendment contains no proportionality guarantee. While the *Harmelin* Court made clear that life imprisonment without parole is "the second most severe [sentence] known to the law," "it cannot be compared with death," so as to allow individual mitigation evidence to be presented in mandatory life without parole sentencing. *Id.* at 995–96 (citing *Sumner v. Shuman*, 483 U.S. 66, 75–76 (1987) (articulating the individualized capital sentencing doctrine as applied to death penalty statutes)). However, the *Harmelin* majority noted that not all techniques are foreclosed for defendants such as Glenn who are sentenced to life imprisonment without parole,

10

since there remains "the possibilities of retroactive legislative reduction and executive clemency." *See id.* at 996; *see also id.* at 1006 (Kennedy, J. concurring) ("It is beyond question that the legislature 'has the power to define criminal punishments without giving the courts any sentencing discretion. . . .'" (quoting *Chapman v. United States,* 500 U.S. 453, 467 (1991))). Therefore, under *Harmelin,* we disagree with Glenn's argument that his due process rights are violated under the federal constitution by his inability to present mitigating evidence as to punishment.

We overrule Glenn's third and final issue.

## IV. CONCLUSION

We affirm the trial court's judgment.

_____
GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
6th day of March, 2014.