NO. 07-02-0532-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



MARCH 23, 2004



______________________________




JASON BAUM TREVINO, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 69TH DISTRICT COURT OF MOORE COUNTY;



NO. 3106; HONORABLE RON ENNS, JUDGE



_______________________________



Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.

MEMORANDUM OPINION


 After appellant Jason Baum Trevino pleaded not guilty, a jury convicted him of
Murder and assessed as punishment twenty-five years confinement. Asserting one issue,
appellant complains the evidence is factually insufficient to establish beyond a reasonable
doubt that he did not act in self-defense. We affirm.

 On June 12, 2001, a group of friends gathered at the victim Freddie Torres's
apartment. The group, which included the victim, Ezekiel Almanza, Nathaniel Godinez,
and appellant, drank beer and watched television. Appellant, who turned 18 in April, had
been living with the victim for the past two months. At some point in the evening, Godinez
and appellant, who were, by all accounts, intoxicated, got into a fist fight outside the front
door of the victim's apartment. The fight moved inside the apartment for a short time, then
returned to the front porch where the victim and Almanza separated appellant and
Godinez. Not long after, appellant and Godinez became embroiled once more, and the
victim left his apartment and "told [appellant] to get inside in five minutes" or he was going
to lock him out of the apartment. Apparently, appellant thought the victim said he was
going to knock appellant out if he did not return to the apartment. After appellant retorted
he did not care whether he was locked out, the victim and Almanza returned to the
apartment. 

 Angered by the victim's perceived threat, appellant began to knock on the front door
of the apartment. When Almanza let appellant into the apartment, appellant approached
the victim and punched him. A fight ensued and resulted in the victim pinning appellant
down on the couch and ordering him out of the apartment for the night. After the victim
released him, appellant laid for a moment on the couch and drolly remarked, "I didn't think
you could beat my ass." Appellant then ran out of the apartment. It was then that Almanza
noticed the victim had blood on his knuckles and was complaining of some pain in his
chest from being kicked there by appellant. The victim placed a bag of frozen vegetables
on his knuckles to relieve the pain. 

 A short while later, a mutual friend of appellant's and the victim's called to request
permission for appellant to return and retrieve his belongings from the apartment. After the
phone call, the victim and Almanza watched television for a while before deciding to go to
bed. About that time, the two heard someone banging on the door, followed by appellant
yelling, "It's me, motherf-----. Open up." The victim opened the door, and appellant, who
was accompanied by his girlfriend Jessica Hernandez, remarked he was "just here to get
[his] clothes." However, as soon as appellant walked into the apartment, he started
throwing punches at the victim. The two became engaged in a violent altercation, and
eventually landed on the couch in the living room, with appellant on top of the victim. 
When appellant stood up, Almanza noticed blood on the right side of the victim's neck and
back and on appellant's left hand. The victim then rushed toward appellant, who placed
him in a headlock. It was at that point that Almanza and Hernandez observed a knife in
appellant's left hand. After ordering Hernandez to call 911, Almanza, who was standing
on appellant's left side, retrieved the knife from appellant and placed it on top of the
television. Appellant and Hernandez then left the apartment, and Almanza called 911.

 When he arrived at the apartment, Larry Dutcher, a captain with the Dumas Fire
Department, found the victim lying in the hallway in a pool of blood. Though the victim had
a faint pulse at the time Dutcher arrived, neither he nor the paramedics who responded to
the scene three or four minutes later could revive him. Robert Lyon, the forensic
pathologist who conducted the victim's autopsy, determined the cause of death to be "stab
wounds to the neck and torso."

 On June 13, 2001, appellant turned himself in to police, who charged him with the
victim's murder. At trial, the State called, among others, the witnesses detailed above. In
response, appellant's theory was that he had committed the offense in self-defense. To
that end, appellant cross-examined Amanda Mendoza, the victim's girlfriend, about a
telephone conversation she had with the victim between his and appellant's first and
second fights. According to Mendoza, the victim told her that "he had kicked [appellant's]
ass," and he was running his knuckles under cold water because they were bruised and
hurting. Mendoza volunteered, however, that the victim complained of his head hurting
where appellant had kicked him. Appellant also cross-examined Hernandez who averred
that it was the victim who threw the first punch during appellant's second altercation with
him. Hernandez further recollected that, at one point during the confrontation, the victim
pinned appellant against the wall in a "choke-like position." Earlier in her testimony,
however, Hernandez admitted that after appellant cleaned up at his mother's house, he
was not really injured. Finally, appellant, while cross-examining Tom Flood, the
investigator assigned to handle the case, elicited testimony regarding the victim's possible
ties to the Latin Kings, a "violent type group." According to Flood, the victim had "Latin
Kings" tattooed on his body, and he had in his apartment a calendar that had a
"representation regarding Latin King" on it. 

 During his case-in-chief, appellant called Godinez to testify about his recollection
of the first altercation between appellant and the victim. Initially, Godinez admitted that he
and appellant had been drinking throughout the evening of June 12, 2001, and that they
were "highly intoxicated." He then testified that, although he did not see the beginning of
the altercation, he did walk into the victim's apartment in time to see appellant laying on the
couch and the victim standing over him. Godinez also told the jury that when appellant
arrived at his house to spend the night, "he [appellant] didn't look like anything happened." 
During cross-examination by the State, however, Godinez indicated that appellant had
bruises on his forehead and a fat lip. Furthermore, Godinez averred appellant told him that
"he went back [to the victim's apartment] for his stuff and that he stabbed him [the victim]." 
Godinez also told the jury that appellant acted careless and more aggressive and liked to
fight when he was drunk. Before resting his case, appellant offered, and the trial court
admitted, into evidence a certified copy of a record of conviction indicating the victim was
convicted of aggravated battery and robbery in Cooke County, Illinois in 1993. 

 By his sole issue, appellant contends the "evidence at trial was factually insufficient
to support the jury's verdict of guilty as charged in the indictment thus rejecting [his] claim
of self defense and, as such, [he] should received a new trial." We disagree. In raising a
justification of self-defense, a defendant bears the burden of production, which requires
the production of some evidence that supports the particular defense. Zuliani v. State, 97
S.W.3d 589, 594 (Tex.Cr.App. 2003). Once the defendant produces such evidence, the
State then bears the burden of persuasion to disprove the raised defense beyond a
reasonable doubt. Id. The burden of persuasion does not require the production of
evidence, but rather only requires that the State persuade the jury beyond a reasonable
doubt that the defendant did not act in self-defense. Id. A jury verdict of guilty results in
an implicit finding against the defensive theory. Id. 

 When a defendant challenges the factual sufficiency of the rejection of a defense,
we must review all of the evidence in a neutral light and ask whether the State's evidence
taken alone is too weak to support the finding and whether the proof of guilt, although
adequate if taken alone, is against the great weight and preponderance of the evidence. 
Id. at 595. The jury is the sole judge of the facts, the witnesses' credibility, and the weight
to be given to the evidence. Johnson v. State, 23 S.W.3d 1, 7 (Tex.Cr.App. 2000). Thus,
the jury may choose to believe or not to believe any portion of the witnesses's testimony. 
Sharp v. State, 707 S.W.2d 611, 614 (Tex.Cr.App. 1986). In conducting our analysis, we
must defer to the trier of fact's determination concerning the weight given contradictory
evidence. See Cain v. State, 958 S.W.2d 404, 407 (Tex.Cr.App. 1997). 

 Regarding the statutory law applicable to this case, we note that a person is justified
in using force against another when and to the degree he reasonably believes the force
is immediately necessary to protect himself against the other's use or attempted use of
force. Tex. Pen. Code Ann. § 9.31(a) (Vernon 2003). Reasonable belief means a belief
that would be held by an ordinary and prudent man in the same circumstances as the
actor. Id. § 1.07(42) (Vernon Supp. 2004). Actual danger is not required; rather, as long
as a defendant's belief is reasonable, he is entitled to use force to protect against an
apparent danger. Jones v. State, 544 S.W.2d 139, 142 (Tex.Cr.App. 1976). The use of
force against another is not justified, however, if the actor provoked the other's use or
attempted use of unlawful force, unless (1) the actor abandons the encounter, or clearly
communicates to the other his intent to do so reasonably believing he cannot safely
abandon the encounter; and (2) the other nevertheless continues or attempts to use
unlawful force against the actor. Tex. Pen. Code Ann. § 9.31(b) (4) (Vernon 2003). 

 Deadly force is a force that is intended or known by the actor to cause, or in the
manner of its use or intended use is capable of causing, death or serious bodily injury. Id.
§ 9.01 (3). Serious bodily injury means bodily injury that creates a substantial risk of death
or that causes death, serious permanent disfigurement, or protracted loss of impairment
of the function of any bodily member or organ. Id. § 1.07(46) (Vernon Supp. 2004). A
person is justified in using deadly force against another: (1) if he would be justified in using
force against the other under section 9.31; (2) if a reasonable person in the actor's
situation would not have retreated; and (3) when and to the degree he reasonably believes
the deadly force is immediately necessary to protect himself against the other's use or
attempted use of unlawful deadly force, or to prevent the other's imminent commission of
aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or
aggravated robbery. Id. § 9.32(a) (Vernon 2003). If the defendant reasonably believes the
use of deadly force, when and to the degree used, is immediately necessary for protection,
he may use deadly force even if, as a factual matter, he is not in actual danger. Jones,
544 S.W.2d at 142. Deadly force, however, is not immediately necessary if a reasonable
person in the position of the defendant would use some available nondeadly method of
self-defense. Kelley v. State, 968 S.W2d 395, 399 (Tex.App.-Tyler 1998, no pet.). 

 When a defendant claims self-defense in a murder case, he may present evidence
of the victim's aggressive or violent character to support the claim. See Tex. R. Evid. 404
(a)(2). The character traits may be proven through either reputation or opinion evidence
or specific instances of conduct. Id. at 405. Specific acts evidence must be known to the
defendant if they are used to show a reasonable apprehension of danger, but if they are
used to show that the victim was the aggressor, the defendant need not have had
knowledge of those acts. Beecham v. State, 580 S.W.2d 588, 590 (Tex.Cr.App. 1979).
Here, appellant maintains he had reason to fear the infliction of serious bodily injury by the
victim because of the previous altercation between them and because of the victim's prior
convictions for aggravated battery and robbery. He claims the same facts conclusively
establish that the victim was the ultimate aggressor. 

 The relevant inquiry, then, is whether sufficient evidence exists to support the jury's
conclusion appellant could not have reasonably believed deadly force was immediately
necessary to protect himself against the victim's use or attempted use of unlawful deadly
force. At the outset, we note there was conflicting evidence regarding appellant's alleged
fear of the victim inflicting upon him serious bodily injury. For instance, although Godinez
claimed appellant suffered a bruised forehead and fat lip after his first altercation with
appellant, Almanza observed no injuries to appellant. Next, Almanza testified that
appellant threw the first punch during the second fight with the victim, while Hernandez
fingered the victim as the first aggressor. And, although the victim bested appellant during
their first altercation, according to Almanza appellant laughed about the victim's physical
prowess. Moreover, appellant returned to the victim's apartment only a short while after
the first dispute and began banging on the door and shouting profanities in an effort to
convince the victim to allow him inside. In addition, there is no evidence to suggest the
victim ever possessed a deadly weapon during either confrontation with appellant. Neither
does the record reveal whether appellant was aware of the victim's prior convictions for
aggravated battery and robbery. From the preceding facts, then, the jury, as fact finder,
was free to reject appellant's claim that he reasonably believed the victim was about to
inflict serious bodily injury upon him. See Saxton v. State, 804 S.W.2d 910, 913-14
(Tex.Cr.App. 1991) (the credibility of appellant's defensive evidence is within the sole
province of the jury, which is free to accept or reject that evidence). The jury was also
entitled to deduce that it was appellant who was the ultimate aggressor in the final dispute,
not the victim. Moreover, a rational jury could have concluded that appellant was not
authorized to use deadly force because he failed to retreat when a reasonable person in
his position would have done so. Finally, the jury was free to find that appellant exceeded
the amount of force he was authorized to use under the circumstances. Thus, the
evidence of guilt is not so weak as to render the verdict clearly wrong or manifestly unjust. 
Nor is the finding of guilt so contrary to the great weight and preponderance of the
evidence as to be clearly wrong. In short, the evidence is factually sufficient to support the
verdict. Appellant's sole issue is overruled.

 Accordingly, the judgment of the trial court is affirmed.


 Don H. Reavis

 Justice


Do not publish.



ading 1 Accent 6"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 









NO. 07-08-00205-CR; 07-08-00206-CR

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL B

 

 MARCH 22, 2010



 



 

LYNN TAYLOR, APPELLANT

 

v.

 

THE STATE OF TEXAS, APPELLEE 



 



 

 FROM THE 320TH DISTRICT COURT OF
POTTER COUNTY;

 

NO. 55,385-D, 55,386-D; HONORABLE DAVID GLEASON, JUDGE



 



 

Before QUINN,
C.J., and CAMPBELL and HANCOCK, JJ.

 

 

MEMORANDUM OPINION

 

 

Appellant Lynn Taylor appeals his
convictions for possession of cocaine[1]
and unlawful possession of a firearm.[2]  Through two issues he challenges the legal
and factual sufficiency of evidence supporting the convictions and by a third
issue he contends the trial court denied his constitutional right to present a
defense.  We will affirm.

Background

On March 5, 2007, members of the
Amarillo police department SWAT team executed a Ano knock@ search warrant for crack cocaine at
a city residence.  According to the
warrant=s supporting affidavit, a
confidential informant told police that within forty-eight hours of March 5
appellant possessed crack cocaine at the residence and represented to the
informant that the substance was crack cocaine. 
When officers entered the residence, they found appellant=s adult daughter Amber Richardson on
a living room couch.  In the upstairs
bedroom, they located appellant in bed with Christa Morales.   

Downstairs, off the living room, was
what officers termed a bar area.  There,
in shelving above the bar officers found two baggies containing, respectively,
19.5 grams and 5.5 grams of a substance later identified as cocaine, and a
loaded .25 caliber handgun.  The shelves
contained three letters addressed to appellant at the residence.    From these envelopes, police obtained three
finger prints matching appellant and one unidentified print.  Another letter was addressed to Morales at
the residence.  A digital scale was found
in a bank bag in a drawer below the bar. 
A finger print lifted from the scale matched appellant.  A cabinet yielded a gun holster, a box of .45 caliber ammunition, and a box of .25 caliber
ammunition.  Among canned food items in a
kitchen cabinet, officers found 138 one-dollar bills.  In kitchen trash, officers found baggies with
the corners removed.  In the upstairs
bedroom occupied by appellant and Morales, officers found $1,500 cash in the
pocket of appellant=s pants.[3]  Appellant=s wallet contained his driver=s license, which listed the residence as his address.  Also in the bedroom was a glass crack pipe
that officers attributed to Morales.  It
contained residue.

Appellant was indicted for
possession, with intent to deliver, of cocaine in an amount four grams or more
but less than two hundred grams and unlawful possession of a firearm.[4]  The guilt-innocence phase of trial was by
jury.  Evidence revealed appellant was on
parole for a felony conviction at the time of the alleged unlawful possession
of a firearm.  A Texas Department of
Public Safety chemist testified to his opinion, based on testing, that the
substance in the two baggies was cocaine. 
A police officer explained that small amounts of crack cocaine are sold
in baggies with the corners removed to better conceal the drug.  Another officer explained that it is not
unusual to find large amounts of cash associated with illegal drug sales.  In his opinion, the sale of illegal drugs is
a Acash and carry business.@ 
According to the officer, narcotics are typically sold in amounts
purchased with ten and twenty dollar bills. 
There was also testimony from an officer that dealers of crack cocaine
use digital scales to weigh narcotics. 
And plastic bags configured in this manner as those found in the kitchen
trash are used in the sale of small amounts of narcotics.  According to other testimony, Richardson had
children and children=s clothing and toys were located in
the residence, she was a Aresident@ of the residence, and mail bearing
her name had been delivered to the residence. 
There was testimony that the residence was owned jointly by appellant
and his siblings.

The jury convicted appellant of the
lesser-included narcotics offense of possession of cocaine in the amount
alleged by the indictment and the firearm violation.  The sentencing range was enhanced by
appellant=s prior felony convictions and a
deadly weapon finding.  The court sentenced
appellant to prison terms of twenty-five years on the narcotics violation and
twelve years on the firearm violation. 
This appeal followed.

Discussion

In his first and second issues,
appellant contends the evidence was legally or factually insufficient to
sustain his conviction for possession of a controlled substance and unlawful
possession of a firearm because of insufficient links connecting him with the
items of contraband. 

When conducting a
legal sufficiency review, we view the evidence in the light most favorable to
the verdict to determine whether a rational fact-finder could have found each
element of the offense beyond a reasonable doubt.  Swearingen v. State, 101 S.W.3d 89, 95
(Tex.Crim.App. 2003); Conner v. State, 67
S.W.3d 192, 197 (Tex.Crim.App. 2001) (citing
Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct.
2781, 61 L.Ed.2d 560 (1979)).  The trier of fact
is the sole judge of the weight and credibility of the evidence.  See Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); Brown v. State, 270 S.W.3d 564, 568 (Tex.Crim.App. 2008), cert.
denied, 129 S.Ct. 2075, 173 L.Ed.2d 1139 (2009).  Accordingly, when performing a legal
sufficiency review, we are not free to re-evaluate the weight and credibility
of the evidence and substitute our judgment for that of the fact-finder.  Dewberry v. State, 4
S.W.3d 735, 740 (Tex.Crim.App. 1999).  Rather, we Adetermine whether
the necessary inferences are reasonable based upon the combined and cumulative
force of all the evidence when viewed in the light most favorable to the
verdict.@  Hooper v. State, 214
S.W.3d 9, 16-17 (Tex.Crim.App. 2007).  If, based on all the evidence, a
reasonably-minded jury must necessarily entertain a reasonable doubt of the
defendants guilt, due process requires that we reverse and order a judgment of
acquittal.  Swearingen, 101 S.W.3d
at 95 (citing Narvaiz v. State, 840 S.W.2d
415, 423 (Tex.Crim.App. 1992)).

A factual
sufficiency review of the evidence is Abarely
distinguishable@ from the legal sufficiency review under Jackson
v. Virginia.  Marshall
v. State, 210 S.W.3d 618, 625 (Tex.Crim.App.
2006).  A factual sufficiency
review considers whether the evidence supporting guilt, though legally
sufficient, is so weak that the jury=s verdict seems
clearly wrong and manifestly unjust, or evidence contrary to the verdict is
such that the jury=s verdict is against the great weight and
preponderance of the evidence.  Id.; Watson v. State, 204 S.W.3d 404, 414-15 (Tex.Crim.App. 2006); Johnson v. State, 23 S.W.3d 1,
11 (Tex.Crim.App. 2000).  

The gravamen of
appellant=s challenge is the sufficiency of evidence
proving his possession of the crack cocaine and a firearm.  APossession means
actual care, custody, control, or management.@  Tex. Penal Code Ann. ' 1.07(a)(39) (Vernon Supp. 2009). 
A person commits a possessory offense only if he voluntarily possesses
the prohibited item.  See id. ' 6.01(a) (Vernon 2003). 
APossession is a
voluntary act if the possessor knowingly obtains or receives the thing
possessed or is aware of his control of the thing for a sufficient time to
permit him to terminate his control.@  Id. ' 6.01(b). 

To prove unlawful
possession of a controlled substance, the State must prove the accused exercised
actual care, custody, control, or management over the contraband and he knew
the matter possessed was contraband.  Tex. Health & Safety Code Ann. '
481.002(38) (Vernon Supp. 2009) and '
481.115(a) (Vernon 2003).  Evans v. State, 202 S.W.3d 158, 162 (Tex.Crim.App.
2006); Poindexter v. State, 153 S.W.3d 402, 405 (Tex.Crim.App.
2005).  To establish unlawful
possession of a firearm by a felon, the State must prove the accused was
previously convicted of a felony offense and possessed a firearm after the
conviction and before the fifth anniversary of his release from confinement or
from supervision, whichever date is later. 
Tex. Penal Code Ann. ' 46.04(a)(1) (Vernon Supp. 2009). 
We analyze the sufficiency of the evidence proving unlawful possession
of a firearm according to the same standards applied in cases of unlawful
possession of a controlled substance.  Bates v. State, 155 S.W.3d 212, 216 (Tex.App.BDallas
2004, no pet.). 

It is not
necessary for the State to prove the accused maintained exclusive possession of
the contraband; rather, joint possession is sufficient to sustain a
conviction.  Cude v. State, 716
S.W.2d 46, 47 (Tex.Crim.App. 1986).  If the accused did not maintain exclusive
control of the location of the contraband, however, the State must offer
additional, independent facts linking the accused to the contraband.  Poindexter, 153
S.W.3d at 406; Evans, 202 S.W.3d at 162.  Thus, the defendants presence or proximity
to contraband, if combined with other evidence, may be sufficient to establish
his actual care, custody or control.  Id.  While not a litmus test, some of the factors
linking an accused to contraband that courts have found may circumstantially
show possession of contraband include: (1) the defendant=s presence when a
search is conducted; (2) whether the contraband was in plain view; (3) the
defendant=s proximity to and the accessibility of
the contraband; (4) whether the defendant was under the influence of narcotics
when arrested; (5) whether the defendant possessed other contraband or
narcotics when arrested; (6) whether the defendant made incriminating
statements when arrested; (7) whether the defendant attempted to flee; (8) whether
the defendant made furtive gestures; (9) whether there was an odor of
contraband; (10) whether other contraband or drug paraphernalia were present;
(11) whether the defendant owned or had the right to possess the place where
the contraband was found; (12) whether the place where the contraband was found
was enclosed; (13) whether the defendant was found with a large amount of cash;
and (14) whether the conduct of the defendant indicated a consciousness of
guilt.  Id. at
162 n.12.  Our analysis focuses not on the number of
links shown but from the Alogical force@ of all the
evidence, direct and circumstantial.  Id. at 161-62. 

Evidence showed the residence was owned jointly by
appellant and his siblings.  But
appellant had lived there some six months at the time officers executed the
search warrant.  His pants pocket
contained a large amount of cash in denominations common to drug
transactions.  Appellant was directly
tied to possession of cocaine by the evidence that, according to a confidential
informant, appellant possessed crack cocaine at the residence and told the
informant the substance was crack cocaine.[5]  The jury could also have linked appellant to
the cocaine and firearm through evidence of mail addressed to him at the
residence and bearing his fingerprint, found in a shelf above the bar where the
firearm and drugs were found, and the digital scale, also bearing appellants
fingerprint.

When viewed in the light most
favorable to the prosecution we find a rational trier
of fact could have found the essential elements of possession of a controlled
substance and unlawful possession of a firearm beyond a reasonable doubt.  

Throughout trial appellant emphasized
the presence of his adult daughter Richardson. 
As noted, she had children and the residence contained children=s toys and clothing.  Relatives of appellant testified that
Richardson resided and received mail at that address.  Despite the efforts of a court-approved
investigator for appellant, Richardson could not be located by the time of
trial.  As also noted, there was evidence
that a crack pipe, found in the bedroom occupied by appellant and Morales,
belonged to Morales.  

While this evidence may point to
occupancy of the residence by others, it does not dilute the force of evidence
linking appellant to the contraband. 
Viewing all the evidence in a neutral light we find the evidence
supporting conviction is not so weak that the determination of the fact-finder
is clearly wrong or unjust.  The evidence
was factually sufficient to support conviction. 
We overrule appellant=s first and second issues.

By his third issue, appellant
contends the trial court erred by excluding his proffered evidence attempting
to tie Richardson more closely to the contraband.  He contends the courts evidentiary ruling
denied him his constitutional right to present to the jury a defense asserting
Richardsons guilt.

For purposes of our disposition of
his third issue, although appellant did not articulate his constitutional
theory to the trial court with any specificity, we will assume the trial court
was sufficiently aware of his contention to preserve it for our review.[6]  

We review a trial
court=s decision to
admit or exclude evidence under an abuse of discretion standard.  Cameron v. State, 241
S.W.3d 15, 19 (Tex.Crim.App. 2007).  A trial court abuses its discretion when its
decision is so clearly wrong as to lie outside that zone within which
reasonable persons might disagree.  McDonald v. State, 179 S.W.3d 571, 576 (Tex.Crim.App.
2005).   

Outside the presence of the jury, the
trial court heard testimony from two Amarillo police officers, neither of whom
was involved in the March 2007 possession arrest for which appellant was being
tried.  Their testimony concerned events
that occurred in January 2007.  One
officer testified he investigated a police report of an aggravated assault that
allegedly occurred in the parking lot of a convenience store on Amarillo
Boulevard.  The report, dated January 2,
2007, told of a fight involving several people. 
According to the report, the officer who authored it Awas told@ that someone named AAmber Richards@ or AAmber Richardson@ had a .25 caliber handgun, may have fired it, and put it in
a trash dumpster in front of the store. 
Although a .25 caliber handgun was recovered from the dumpster, the
officer was not able to determine if the gun was fired during the fight.  He said police found no shell casings at the
scene.  The second officer testified that
he recovered the handgun from the dumpster. 
He explained that a surveillance video recording from the store showed
someone disposing of the weapon, but he was not aware of the identity of this
person.  Police did not open a case on
the incident as none of the alleged complainants wished to pursue the matter.  In support of presenting this testimony
before the jury, appellant argued it would show an AM.O.@ for Richardson, that a .25 caliber gun was her Agun of choice,@ and that she planted the gun and
drugs in the residence in exchange for police dropping any charge against her
from the January 2 incident.  The trial
court ruled the proffered evidence was not relevant, and did not allow the jury
to hear the officers testimony.

[T]here are two distinct scenarios in which rulings excluding evidence
might rise to the level of a constitutional violation: 1) a state evidentiary
rule which categorically and arbitrarily prohibits the defendant from offering
otherwise relevant, reliable evidence which is vital to his defense; and 2) a
trial courts clearly erroneous ruling excluding otherwise relevant, reliable
evidence which forms such a vital portion of the case that exclusion
effectively precludes the defendant from presenting a defense.  In the first category, the constitutional
infirmity is in the arbitrary rule of evidence itself.  In the second category, the rule itself is
appropriate, but the trial court erroneously applies the rule to exclude
admissible evidence to such an extent that it effectively prevents the
defendant from presenting his defensive theory. 
In other words, the erroneous ruling goes to the heart of the defense.

 

Wiley v. State, 74 S.W.3d 399, 405 (Tex.Crim.App. 2002) (footnotes omitted).

As we understand
appellants argument, he does not challenge a Texas evidentiary rule but argues
the courts ruling fits the second scenario described in Wiley because it excluded his proffer of otherwise relevant,
reliable evidence forming such a vital part of his defensive theory that he
effectively was precluded from presenting a defense. 

Relevant evidence
is Aevidence having
any tendency to make the existence of any fact that is of consequence to the
determination of the action more probable or less probable than it would be
without the evidence.@  Tex. R. Evid. 401.  AEvidence which is
not relevant is inadmissible.@  Tex. R. Evid.
402.  Evidence is relevant if it is
material and probative.  Steven Goode,
Olin Guy Wellborn, III, and M. Michael Sharlot, 1
Texas Practice: Guide to the Texas Rules of Evidence ' 401.1 (3d ed.
2002).  To be material, the evidence Amust be shown to
be addressed to the proof of a material proposition, i.e., any fact that is of
consequence to the determination of the action.@  Id. (internal quotation marks
omitted).  Evidence is considered
probative if it Atends to make the existence of the fact
more or less probable than it would be without the evidence.@  Id. (internal quotation marks
omitted).

The Sixth and
Fourteenth Amendments to the United States Constitution guarantee an accused a
meaningful opportunity to present a complete defense.  Crane v. Kentucky, 476
U.S. 683, 690, 106 S.Ct. 2142, 2146, 90 L.Ed.2d 636
(1986).  It is equally clear,
however, that the exercise of that opportunity does not preclude a trial court
from excluding testimony that presents irrelevant or unreliable evidence.  See
Crane, 476 U.S. at 689-90 (Constitution gives trial judges wide latitude
to exclude evidence that is only marginally relevant or poses undue risk of
confusion of the issues); Wiley, 74
S.W.3d at 407-08 (no constitutional violation from exclusion of proffered
testimony under Rule of Evidence 403).  Accord, Montana v. Egelhoff,
518 U.S. 37, 42, 116
S.Ct. 2013, 2017, 135 L.Ed.2d 361 (1996) (quoting
Taylor v. Illinois, 484 U.S. 400, 410, 108 S.Ct.
646, 653, 98 L.Ed.2d 798 (1988)) (accused does not have an unfettered right to offer [evidence]
that is . . . inadmissible under standard rules of evidence@); United States v. Almonte, 956 F.2d 27, 30 (2d Cir. 1992) (constitutional
right to present a defense Adoes not give criminal defendants
carte blanche to circumvent the rules of evidence@). 

Without abusing
its discretion, the trial court here could have regarded the layers of hearsay
included in appellants proffered testimony made it unreliable as proof
appellants daughter was the person who put the .25 caliber handgun in the
dumpster in January 2007.  See Stevens v. State, No. 01-07-00111-CR, 2008 Tex. App. Lexis
5237, at *15-16 (Tex.App.--Houston 1st Dist. July 10,
2008, no pet.) (mem. op.) (not designated for publication) (hearsay evidence is unreliable because cross-examination is
not available to test the veracity of the declarant).  Also without abusing its discretion the court
could have determined the facts purportedly shown by the evidence, that is,
that Richardson possessed and disposed of such a handgun in January 2007, were
not probative of any fact of consequence to the determination of appellants
guilt.  Further, the trial court could
have determined that any relevance the evidence possessed was substantially
outweighed by the danger of confusion of the issues involved in appellants
prosecution.  See Tex. R. Evid. 403; Wiley, 74 S.W.3d at 407-08 (Rule 403
supported exclusion of evidence of alternative perpetrator).  Such a conclusion by the trial court would
have been supported by appellants assertion the evidence showed a likelihood
that police did not charge Richardson for her possession of the gun because she
agreed to plant the drugs found in March on appellant.  Such speculation would not have aided the
jurys determination of the issues properly before it in this case.  For all these reasons, we see no violation of
appellants constitutional right to present a defense from the trial courts
exclusion of appellants proffered testimony. 
See Wiley, 74 S.W.3d at 405
(violation may occur from erroneous exclusion of otherwise relevant, reliable
evidence).  We overrule appellant=s third issue.

Conclusion

Having overruled
appellant=s three issues, we affirm the judgment of
the trial court.

 

James T.
Campbell

                                                                                                            Justice

            








Do
not publish.  











[1]  Tex. Health & Safety Code Ann. ' 481.115(a),(d) (Vernon 2003).





[2] 
Tex.
Penal Code Ann. ' 46.04(a)(1)
(Vernon Supp. 2009).





[3]  Photos show appellants pants lying folded on the floor next to the bed.
The cash consisted of seven $100 bills, one $50 bill, thirty-three $20 bills,
seven $10 bills, one $5 bill, and fifteen $1 bills.  





[4] 
Appellant refused court-appointed legal representation and appeared pro
se in the trial court proceedings. No appellate issue is raised with regard to his self-representation at
trial.   





[5]  This hearsay statement was admitted without objection.  See Poindexter, 153 S.W.3d at 406 (Aonce the trier of fact has weighed the probative value of unobjected-to hearsay evidence in its factfinding
process, an appellate court cannot deny that evidence probative value or ignore
it in its review of the sufficiency of the evidence@). 





[6] Proper preservation of error
requires a party make a timely and specific objection as soon as the basis for
the objection becomes apparent, and the complaint on appeal must not vary from
the trial court objection.  See Tex. R. Evid.
103(a)(1); Tex. R. App. P. 33.1(a)(1)(A); Heidelberg v. State, 144 S.W.3d 535, 536
(Tex.Crim.App. 2004). 
Even claims of constitutional error may be waived if not properly
brought to the attention of the trial court. See Wright v. State, 28 S.W.3d 526, 536 (Tex.Crim.App.
2000) (waiver of objection under Confrontation Clause).