# NO. 12-17-00080-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *ROBVIA LENEICE SIMPSON,*<br>*APPELLANT* | § | *APPEAL FROM THE 87TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *ANDERSON COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Robvia Leneice Simpson appeals her convictions for assault on a public servant (Count One) and aggravated assault with a deadly weapon (Count Two). In a single issue, Appellant argues the trial court improperly denied her request for a self-defense instruction in the jury charge with respect to Count Two. We reverse and remand Count Two and affirm with regard to Count One.

## BACKGROUND

In 2015, Appellant pleaded "guilty" to the offense of abandoning and endangering a child in Houston County. Pursuant to a plea agreement, she received one year of deferred adjudication community supervision. While on community supervision, Appellant was arrested in Anderson County. Houston County filed a motion to adjudicate guilt and requested that Appellant's community supervision be revoked based in part on the alleged crimes committed in Anderson County. The motion to adjudicate guilt alleged that Appellant violated several terms of her community supervision, including:

> In that the Defendant, Robvia Simpson, in the State of Texas and County of Anderson and while during the term of said community supervision, on or about the 21st day of September, 2015, did then and there [i]ntentionally, knowingly, and recklessly cause bodily injury to Robert Simmons by hitting him on the head with an ashtray.

> In that the Defendant, Robvia Simpson, in the State of Texas and County of Anderson and while during the term of said community supervision, on or about the 21st day of September, 2015, did then and there [i]ntentionally, knowingly, and recklessly cause bodily injury to Code Rice, hereafter styled the complainant, by hitting him, choking him, and scratching the back of his head and neck with her keys, or fingernails, which caused bodily injury, and the defendant did then and there know that the complainant was then and there lawfully discharging a lawful duty, to-wit: Complainant had lawfully arrested the Defendant for aggravated assault.

Appellant pleaded "true" to all of the allegations, was found "guilty," and was sentenced to six months confinement.

A grand jury subsequently returned an indictment against Appellant in Anderson County. Count One of the indictment alleged Appellant committed assault on a public servant while exhibiting a deadly weapon, to wit, her keys, against Rice. Count Two accused Appellant of committing aggravated assault with a deadly weapon, to wit, an ashtray, against Simmons. Other than the deadly weapon charges, the accusations in the indictment parallel the accusations in Houston County's motion to adjudicate guilt. Appellant pleaded "not guilty" to both counts and the matter proceeded to a jury trial in Anderson County.

During trial, Appellant testified that she struck Simmons with the ashtray in self-defense. At the charge conference, Appellant submitted a self-defense instruction to be included in the jury charge. The State argued that because Appellant pleaded "true" to the allegation that she committed the offense against Simmons when her community supervision was revoked in Houston County, res judicata barred her from asserting self-defense in the Anderson County proceeding. The trial court agreed and refused to submit the instruction. Appellant objected to the charge's omission of the self-defense instruction.

The jury found Appellant "guilty" of the lesser included offense of assault on a public servant and "guilty" of aggravated assault with a deadly weapon. Following the punishment phase, the jury assessed punishment at imprisonment for ten years on Count One and eleven years on Count Two. The trial court entered judgment in accordance with the jury's verdict and ordered the sentences run concurrently. This appeal followed.

## CHARGE ERROR

In her sole issue, Appellant argues that the trial court erred when it refused her request to instruct the jury on the issue of self-defense with regard to Count Two of the indictment.[1] At trial

---

[1] Appellant presents no complaints regarding her conviction for Count One of the indictment.

and on appeal, the State does not dispute that the evidence raised the issue of self-defense. Instead, the State contends that Appellant is barred from arguing self-defense by res judicata. According to the State, because Appellant did not assert self-defense in the Houston County revocation proceeding, she could not do so at trial in Anderson County.

## Standard of Review and Applicable Law

The review of an alleged jury-charge error in a criminal trial is a two-step process. *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994). First, an appellate court must determine whether there was error in the jury charge. *Id.* Second, if there is charge error, the court must determine whether there is sufficient harm to require reversal. *Id.* at 731–32. The standard for determining whether there is sufficient harm to require reversal depends on whether the appellant objected. *Id.* at 732. If the appellant objected to the error at trial, the appellate court must reverse the trial court's judgment if the error "is calculated to injure the rights of the defendant." TEX. CODE CRIM. PROC. ANN. art. 36.19 (West 2006). This standard requires proof of no more than some harm to the accused from the error. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). An appellant who did not raise the error at trial can prevail only if the error is so egregious and created such harm that he has not had a fair and impartial trial. *Id.* "In both situations the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Id.* In assessing whether the trial court erred by denying a requested defensive instruction, an appellate court must examine the evidence offered in support of the defensive issue in the light most favorable to the defense. *Id.*

The penal code states that a person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself. TEX. PENAL CODE ANN. § 9.31(a) (West 2011). And deadly force may be used to defend oneself if he "reasonably believes the deadly force is immediately necessary" to protect himself from the use or attempted use of unlawful deadly force. *Id.* § 9.32(a)(2)(A) (West 2011). The penal code defines a "reasonable belief" as one that would be held by an ordinary and prudent man in the same circumstances as the actor. *Id.* § 1.07(a)(42) (West Supp. 2017). Where the evidence raises the issue of apparent danger, the court, in instructing the jury on the law of self-defense, should tell the jury that a person has a right to defend from apparent danger to the same extent as he

would had the danger been real, provided he acted upon a reasonable apprehension of danger as it appeared to him from his standpoint at the time. *Jones v. State*, 544 S.W.2d 139, 142 (Tex. Crim. App. 1976).

**Evidence of Self-Defense**

According to the record, Appellant and Simmons were roommates at the time of the offense. Appellant testified that approximately one month before the offense, she had an altercation with Simmons. In that altercation, she was arguing with her boyfriend when Simmons inserted himself into the argument and grabbed Appellant's shirt. She asked him twice to let go and a fight ensued when he refused. During the fight, she and Simmons pulled each other's hair and ended up on the ground. Appellant's boyfriend broke up the fight.

Appellant testified that on the day of the offense, she and her boyfriend were home watching Netflix most of the day. At some point, Simmons arrived home and began watching with them. Appellant stated that Simmons had been drinking since his arrival. Simmons complained about the internet buffering slowly and asked Appellant if she wanted him to fix it. After Appellant said "no," Simmons continued complaining, which escalated into an argument. During the argument, Appellant went to the bathroom. When she returned, Simmons "jumped in [her] face" and was cursing. According to Appellant, Simmons attempted to grab the ashtray but she "snatched it" before he could. She testified that she grabbed the ashtray because she remembered him "putting his hands on [her]" during their previous encounter. Appellant stated that Simmons pushed her and she swung the ashtray as she fell backwards. He stumbled and grabbed the television to steady himself but he fell, along with the television and monitor. Appellant attempted to leave and go to her room, but Simmons jumped up and grabbed her hair. She started swinging her arms trying to defend herself and he threw her on the couch. Their other two roommates separated them, and Simmons called the police. Appellant testified that she will protect herself if a person puts his hands on her, but contended that she does not start fights.

Simmons testified that he had been drinking prior to his altercation with Appellant on the day of the offense and was "pretty lit." According to Simmons, Appellant arrived home after dark, grabbed the remote, and changed the channel on the television. Simmons testified that the two exchanged words and when he stood up, "I guess she thought I was going to hit her, because that's when she struck me with the ashtray," and that "she perceived that [the act of standing up]

4

as a threat." When Appellant hit him with the ashtray, he fell over. Simmons testified that he tried to stand up, but Appellant got on top of him and began hitting him.

Simmons admitted that he and Appellant got into another fight a few weeks before the offense. Regarding the offense, he testified, "She probably assumed – I was drunk and cursing at her, and yelling, and when I went to stand up, she probably assumed I was fixing to hit her, so she struck me first." When asked if Appellant was "safe to assume that [he was] going to put [his] hands on her," Simmons responded "yes."

Officer Cody Rice of the Palestine Police Department testified that, at the scene of the offense, Appellant claimed self-defense and claimed that Simmons struck her first. Officer Rice stated that Appellant asserted that she was pushed first. However, he and the other officers decided that Appellant picked up the ashtray before being pushed. Officer Rice stated that Appellant must have been anticipating something when she picked up the ashtray.

As previously stated, the parties do not dispute that the evidence at trial raised the issue of self-defense. And we need not "decide whether appellant's claim of self-defense is strong or credible, only that there is some evidence such that the trial court should have included a self-defense instruction in the jury charge." *Lozano v. State*, No. 05-14-00593-CR, 2016 WL 2756438, at \*3 (Tex. App.—Dallas May 9, 2016, no pet.) (mem. op., not designated for publication); *see Smith v. State*, 676 S.W.2d 584, 586–87 (Tex. Crim. App. 1984) ("It is axiomatic that when properly requested, the trial court must instruct the jury on every defensive theory raised by the evidence, and it makes no difference whether such evidence or testimony was produced by the prosecution or the defense, or whether such defensive evidence or testimony might be strong, weak, unimpeached, or contradicted[]"). Given that the above evidence constitutes some evidence of self-defense, we now proceed to determine whether that defense was barred by res judicata. *See Jones*, 544 S.W.2d at 142; *see also Beltran v. State*, 472 S.W.3d 283, 290 (Tex. Crim. App. 2015) ("A defendant's testimony alone is sufficient to raise a defensive issue requiring an instruction in the charge[]"); *Beckstrand v. State*, No. 02–12–00480–CR, 2015 WL 1544077, at \*7 (Tex. App.—Fort Worth Apr. 2, 2015, no pet.) (mem. op., not designated for publication) ("Evidence offered in support of a defensive issue is reviewed in the light most favorable to the defendant[]").

**Error in the Charge**

Under the doctrine of res judicata, if an issue of ultimate fact has been determined by a final and valid judgment, the issue cannot be litigated again in a future lawsuit by the same parties. *Getman v. State*, 255 S.W.3d 381, 384 (Tex. App.—Austin 2008, no pet.). To ascertain whether an issue is precluded, "courts must determine (1) exactly what facts were necessarily decided in the first proceeding, and (2) whether those necessarily decided facts constitute essential elements of the offense in the second trial." *Id.* The court of criminal appeals has held that res judicata can arise from determinations made in a probation-revocation hearing. *Ex parte Tarver*, 725 S.W.2d 195, 197 (Tex. Crim. App. 1986). The court has also determined that two prosecuting authorities can be the same party for res judicata purposes. *Ex parte Doan (Doan II)*, 369 S.W.3d 205, 213 (Tex. Crim. App. 2012). This is because a prosecuting authority who alleges a criminal offense in a community supervision revocation hearing represents the same state interests as a prosecuting authority who later alleges the same criminal offense in a trial. *Id.* at 212–13.

On remand in *Doan*, the Fort Worth Court of Appeals explained that the trial court conducting Doan's revocation hearing did not enter a finding of "not true" regarding the theft allegation in the motion to revoke. *Ex parte Doan (Doan III)*, No. 03-08-00704-CR, 2012 WL 6698987, at *1-2, 4 (Tex. App.—Fort Worth Dec. 21, 2012, pet. ref'd) (mem. op., not designated for publication). Rather, the trial court essentially overruled the motion to revoke, which was insufficient to bar a subsequent prosecution. *Id*. at *4. Thus, Doan failed to meet his burden of demonstrating that a factual issue was decided in a prior proceeding that barred the Travis County Attorney from prosecuting him for theft. *Id*. at *5. Accordingly, the cases applying *Doan II* and *Tarver* in the revocation context concern cases in which there were no fact findings on the underlying allegations in the revocation proceeding and the State subsequently attempted to prosecute the defendant for that same crime in a later trial. *See Doan III*, 2012 WL 6698987, at *1–2; *Ex parte Claudio*, No. 01-15-00905-CR, 2016 WL 3571259, at *1, 3 (Tex. App.—Houston [1st Dist.] June 30, 2016, pet. ref'd) (mem. op., not designated for publication) ("because the trial court did not make a finding adverse to the State, the State is not collaterally estopped from prosecuting appellant for DWI in Harris County[]"). In the case at hand, however, the underlying allegations were all found "true."

Moreover, the State characterizes the issue in the present case as one of "res judicata" instead of "collateral estoppel." ***Doan II*** addressed res judicata in a broad sense without distinguishing between claim and issue preclusion. In her dissent, Presiding Judge Keller explained that "res judicata" is sometimes used as a broad term to describe both claim preclusion and issue preclusion. ***Doan II***, 369 S.W.3d at 221 (Keller, P.J., dissenting). At other times, the term is used in a more narrow sense to refer only to claim preclusion, which leaves the concept of issue preclusion to be described as "collateral estoppel." ***Id.*** Justice Keller explains:

> [T]he question before us is one of issue preclusion, not claim preclusion. Whether a person should be convicted of a crime and whether his probation should be revoked are separate claims. On the other hand, whether a crime was committed is merely an issue that might arise in a probation revocation context. So, here, we are concerned with collateral estoppel.

***Id.*** at 222. This distinction is important because the doctrine of collateral estoppel may carry limitations in criminal cases that do not exist in civil cases. ***York v. State***, 342 S.W.3d 528, 549 (Tex. Crim. App. 2011) (citing ***Standefer v. U.S.***, 447 U.S. 10, 100 S. Ct. 1999, 64 L. Ed. 2d 689 (1980)).

The court of criminal appeals has yet to definitively articulate the differing standards of proof between res judicata and collateral estoppel in the criminal context. Because the doctrine of res judicata began in civil law, where the criminal standards are unclear, we are guided by the standards set forth by the Texas Supreme Court in the civil context. *See* ***Ashe v. Swenson***, 397 U.S. 436, 443, 90 S. Ct. 1189, 1194, 25 L. Ed. 2d 469 (1970); ***State v. Waters***, No. 02-16-00274-CR, 2017 WL 2877086, at *6 n.2 (Tex. App.—Fort Worth July 6, 2017, pet. granted) (mem. op., not designated for publication) (Sudderth, J., concurring). In civil cases, res judicata bars the relitigation of claims *actually litigated* as well as those that *should have been litigated*, as long as the claims arose out of the same transaction. ***Waters***, 2017 WL 2877086, at *6 n.2 (Sudderth, J., concurring) (citing ***Igal v. Brightstar Info. Tech. Grp.***, 250 S.W.3d 78, 86 (Tex. 2008)). Collateral estoppel is more restrictive, barring only the relitigation of a specific issue already decided in an earlier case and focusing specifically on what was both actually litigated and essential to the judgment. ***Id.*** (citing ***Van Dyke v. Boswell, O'Toole, Davis & Pickering***, 697 S.W.2d 381, 384 (Tex. 1985)).

> For collateral estoppel to apply, the same facts sought to be litigated in the second suit must have been "fully litigated" in the first suit, and they must have been "essential to the judgment,"

meaning that if the original judgment could be independently supported on more than one determination, neither determination would be essential to the judgment.

*Id.* (citing *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 522 (Tex. 1998)).

In this case, as in *Doan II*, we are concerned with collateral estoppel or issue preclusion. Unlike in *Doan II*, however, the present case involves a situation in which the underlying allegation, i.e., the assault against Simmons, was found "true." Thus, we will apply the concept of collateral estoppel to the specific facts of the case at hand.

In the Houston County case, the State alleged Appellant violated ten provisions of her community supervision. Appellant pleaded "true" to all of the State's alleged violations. The trial court determined that Appellant committed each of those violations. The alleged assault on Simmons was only one of such violations. When the State alleges several violations in its revocation motion, the revocation order is sufficient if only one violation is supported by a preponderance of the evidence. *See Bigham v. State*, 233 S.W.3d 118, 121 (Tex. App.—Texarkana 2007, no pet.) *see also Pierce v. State*, 113 S.W.3d 431, 436 (Tex. App.—Texarkana 2003, pet. ref'd) (to revoke probation, State must prove every element of at least one ground for revocation by a preponderance of the evidence). Accordingly, because the trial court's revocation of Appellant's community supervision could have been independently supported by any one of Appellant's violations of her community supervision, none of the allegations are considered "essential" to the judgment. *See Waters*, 2017 WL 2877086, at *6 (Sudderth, J., concurring) (citing *Johnson & Higgins of Tex., Inc.*, 962 S.W.2d at 522); *see also Bigham*, 233 S.W.3d at 121; *Pierce*, 113 S.W.3d at, 436. As a result, Appellant's alleged assault on Simmons was not an essential element of the Houston County revocation proceeding and Appellant's self-defense claim is not barred by collateral estoppel in the Anderson County proceeding.

Moreover, Appellant's self-defense claim is not barred for an additional reason. A probation-revocation proceeding does not place the defendant in jeopardy because a revocation hearing is not a criminal prosecution; that is, it is not a proceeding that could result in a conviction. *Doan II*, 369 S.W.3d at 219 (Keller, P.J., dissenting). Some courts have also held that a probation-revocation hearing is not a "valid and final judgment" for collateral estoppel purposes because it is not a final determination of the probationer's involvement in the new criminal activities. *Id.* Accordingly, there is no final judgment on Count Two in this case, for

purposes of collateral estoppel, given it was merely a ground for revocation. For the above reasons, the trial court erred by refusing Appellant's requested self-defense instruction.

**Harm Analysis**

Because Appellant objected to the omission of a self-defense instruction in the jury charge, she is entitled to a reversal if the record shows she suffered some actual harm from the error. *See Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013). When performing a harm analysis, we consider the jury charge as a whole, the arguments of counsel, the entirety of the evidence, and any other relevant information in the record. *Id*.

Chapter Nine of the Texas Penal Code (which contains the above-referenced sections 9.31 and 9.42) is entitled "Justification Excluding Criminal Responsibility." TEX. PENAL CODE ANN. §§ 9.01–.63 (West 2011). It includes justifications such as necessity and public duty, and explains the justification aspects of protection of persons and property. *Young v. State*, 991 S.W.2d 835, 838 (Tex. Crim. App. 1999). If the conduct in question is justified under one of the provisions of Chapter Nine, it is a defense to prosecution. TEX. PENAL CODE ANN. § 9.02 (West 2011); *see Young*, 991 S.W.2d at 838. However, a defendant is entitled to an instruction involving one of the justification defenses "only ... when the defendant's defensive evidence essentially admits to every element of the offense including the culpable mental state, but interposes the justification to excuse the otherwise criminal conduct." *Shaw v. State*, 243 S.W.3d 647, 659 (Tex. Crim. App. 2007).

Appellant never denied striking Simmons with the ashtray. Rather, she admitted striking Simmons and claimed that she did so in self-defense. According to Appellant, she only swung the ashtray after Simmons pushed her down. In addition, Appellant stated that she had a previous altercation with Appellant in which he grabbed her shirt and pulled her hair. Simmons himself admitted that Appellant was reasonable in assuming that he would hit her because of their previous history and his being intoxicated. Officer Rice also testified that it appeared Appellant anticipated something when she grabbed the ashtray. Furthermore, Appellant's counsel made it clear during opening argument that Appellant's defensive theory was that she acted in self-defense.

After reviewing the charge, evidence, and arguments of counsel, we conclude that this is a case in which the jury was "without a vehicle by which to acquit a defendant who has admitted to all the elements of the offense." *Cornet v. State*, 417 S.W.3d 446, 451 (Tex. Crim. App. 2013)

9

(explaining harm generally associated with a denied self-defense instruction); *see, e.g., **Beckstrand**,* 2015 WL 1544077, at *10 ("Because Appellant admitted striking Noah, without the self-defense instruction, Appellant admitted the offense."). Without the self-defense instruction, the jury had no option but to find Appellant guilty. *See **Cornet***, 417 S.W.3d at 451. Consequently, Appellant suffered some harm as a result of the omission of the self-defense instruction. *See **Miller v. State***, 815 S.W.2d 582, 586 n.5 (Tex. Crim. App. 1991) (unless all harm is abated, an appellant suffered "some" harm); *see also **Beckstrand**,* 2015 WL 1544077, at *10. "[A]ny harm, regardless of degree, which results from preserved charging error, is sufficient to require a reversal of the conviction." ***Arline v. State***, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986). We sustain Appellant's sole issue.

## DISPOSITION

Having sustained Appellant's single issue, we ***reverse*** the trial court's judgment on Count Two and ***remand*** for further proceedings consistent with this opinion. Further, we ***affirm*** the trial court's judgment on Count One.

JAMES T. WORTHEN
Chief Justice

Opinion delivered April 18, 2018.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**APRIL 18, 2018**

**NO. 12-17-00080-CR**

**ROBVIA LENEICE SIMPSON,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 87th District Court

of Anderson County, Texas (Tr.Ct.No. 87CR-16-32761)

THIS CAUSE came to be heard on the appellate record and the briefs filed herein, and the same being considered, because it is the opinion of this court that there was error in the judgment of the court below, it is ORDERED, ADJUDGED and DECREED by this court that the judgment be **reversed** with regard to Count Two and the cause **remanded** to the trial court **for further proceedings** in accordance with the opinion of this court; that the judgment be **affirmed** with regard to Count One; and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*